[No. 40062-6-II.   Division Two.   August 3, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. AARON MICHAEL HAHN, *Appellant*.

*Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*Deborah S. Kelly, Prosecuting Attorney,* and *Brian P. Wendt, Deputy,* for respondent.

¶1 WORSWICK, A.C.J. — Aaron Hahn appeals his conviction for solicitation to commit first degree murder. He argues that (1) the information failed to charge a crime and violated his right to notice, (2) statements he made to police were obtained in violation of his right to counsel, (3) the trial court erred in refusing to instruct the jury on the lesser included offense of solicitation of fourth degree assault, (4) the State offered improper opinion testimony, (5) he received ineffective assistance of counsel, and (6) the criminal solicitation statute is unconstitutionally overbroad. Holding the trial court erred by failing to give a lesser included offense instruction, we reverse and remand.

## FACTS

¶2 Hahn had a multiyear sexual relationship with S.M., an underage girl. On March 24, 2008, Hahn was charged with four counts of third degree child rape, sexual exploitation of a minor, processing depictions of minors engaged in sexually explicit conduct, and stalking. At his arraignment, the trial court appointed an attorney to represent him.

¶3 While in custody, Hahn had his mother send several e-mails to S.M., encouraging her to drop the charges against him. After that proved unsuccessful, Hahn began talking with other inmates about his situation and eventually asked Michael Hendricksen if he knew anyone who could "get to" S.M. Report of Proceedings (RP) (Oct. 28, 2009) at 92. Hendricksen told Hahn that he did not know anyone who could hurt S.M., so Hahn asked another inmate, Norman Livengood, if he had any mafia connections. After

talking about it for a few days, Livengood became concerned that Hahn was serious and contacted Sergeant Jeff Finley at the jail. Sergeant Finley contacted the Sequim Police Department to report what he had heard from Livengood.

¶4 Soon thereafter, Sequim Police Department Detectives Kori Malone and Cory Hall met with Livengood. Livengood told the detectives about Hahn's interest in hiring someone to murder S.M. Livengood agreed to wear a wire to record future conversations with Hahn. After the detectives obtained a warrant for the recording, they provided a wire and a phone number to Livengood to give to Hahn so he could call Detective Mike Grall, who would act as a hit man named "Miguel." RP (Oct. 13, 2009) at 73-87. On May 21, 2008, Hahn and Livengood then engaged in the following exchange regarding additional details:

> [Livengood]: Hey, whenever I call him.
>
> [Hahn]: Yeah.
>
> [Livengood]: What if he asks me what you, what, what, what exactly you want done.
>
> [Hahn]: I thought you already f—ing, I thought that he already told you that he was going to . . . I thought you already told me he knew.
>
> [Livengood]: Yeah, but he might want to know exactly what you want done.
>
> [Hahn]: I want her to disappear.
>
> [Livengood]: I can't hear you, dude.
>
> [Hahn]: I want her to disappear.
>
> [Livengood]: That's easy enough I guess.
>
> [Hahn]: Disappear, make it look like she didn't exist.
>
> . . . .
>
> [Hahn]: Make it look like she never existed.
>
> . . . .
>
> [Livengood]: You just want her to disappear?
>
> [Hahn]: Just say that, yep.
>
> . . . .
>
> [Hahn]: That's discreet enough that the cops won't figure it out but he'll know what I'm talking about.

. . . .

Ex. 41, at 6, 13.

¶5 The next day, on May 22, Livengood provided Hahn with a phone number for "Miguel" and told him to call to discuss the details. Later that day, Hahn called "Miguel":

[Hahn]: Hello.

[Miguel]: Hello.

[Hahn]: Is this Miguel?

[Miguel]: Yes.

[Hahn]: Okay, hey, and this is Aaron.

. . . .

[Miguel]: I think I have everything I need[.]

[Hahn]: Okay.

[Miguel]: Ah, there's just a few, ah, few things that I need to know if there's anything specific that you needed or wanted.

[Hahn]: Um, not really, no, ah, I kind of just trust however you, you think you want to get it done.

[Miguel]: Alright, um what about, you know, I'll, I'll get the, I'm gonna, I'm gonna give her a present that you wanted, I didn't know how you wanted it, whether you wanted your name attached to it or, so she knew who it was from, or did you just want it anonymously?

[Hahn]: Just, ah, put it anonymously.

[Miguel]: All right. That's, ah, not a problem. What about, ah, I got the notes and everything and just want to make sure that that's going to be followed through on your end once it's ah, once I get the gift delivered.

[Hahn]: It will be, yes.

. . . .

[Miguel]: All right, um, what about confirmation, how do you want confirmation once, ah, the gift has been delivered?

[Hahn]: Um, can you do like some sort of discreet letter?

[Miguel]: From me or from her?

[Hahn]: Um, from you.

[Miguel]: Okay, yeah, I can get that, you'll know who it's from when you get it.

. . . .

[Hahn]: Um, when do you think it'll be taken care of ?

[Miguel]: Well, how soon, um, are you interested in me getting it there?

[Hahn]: The sooner the better.

[Miguel]: Okay.

[Hahn]: I mean if we can do, if we can do, do something by the, ah, by the end of the month that would be great.

. . . .

[Hahn]: Yeah, just so long as it's done by, by about the, ah, beginning of, of, ah, next month.

[Miguel]: Okay, what's going on, [i]s there something going on with you that the time line [i]s going to be affected?

[Hahn]: Um, just, Ju- June 9th I gotta get it, gotta get it taken care of by then.

. . . .

Ex. 52.

¶6 Then on May 23, 2008, Sergeant Sean Madison and Detective Hall went to the Clallam County jail where Hahn was located to let him know that based on the new evidence, they would be charging him with solicitation of first degree murder. The officers did not ask Hahn any questions at that time and left the jail. After the officers left, Hahn told Sergeant Matt Blore at the jail that he wanted to speak to the officers. But when Sergeant Blore contacted them to pass this message along, the officers refused, stating that they would not speak with Hahn without his attorney.

¶7 Apparently Hahn did not take no for an answer and again reiterated his desire to talk to the officers, even without his attorney. Sergeant Blore again contacted the officers and passed this message along. As a result, the officers returned to the jail to speak with Hahn. The officers read Hahn his *Miranda*[1] rights, which he explicitly

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

waived. Hahn also agreed to have the interview recorded. Throughout the interview, Hahn acknowledged talking with "Miguel" and other inmates, but he adamantly denied any interest in having S.M. killed. Instead, Hahn insisted that he "did not want her dead," that the call to Miguel "was not about murder," and that all he originally thought was that Miguel would "maybe just scare her." Ex. 46.

¶8 On May 27, 2008, the State charged Hahn with solicitation of first degree murder. The first amended information in this case, filed on September 21, 2009, provided in relevant part:

> On or about the period of time between May 15 and May 22, 2008, in the County of Clallam, State of Washington, [Hahn], with intent to promote or facilitate the commission of First Degree Murder, to-wit: with a premeditated intent to cause the death of another person, to-wit: S.M[.], offered to give or gave money or other thing of value to another to engage in specific conduct which would constitute such crime and\or would establish complicity of such person in its commission or attempted commission had such crime been attempted or committed; contrary to Revised Code of Washington 9A.28.030 and RCW 9A.32.030(1)(a), a class A felony.
>
> Maximum Penalty—Life imprisonment and/or a $50,000 fine pursuant to RCW 9A.32.030(2) and RCW 9A.20.021(1)(a), plus restitution and assessments.
>
> Minimum Penalty—Pursuant to RCW 9.94A.540(1)(a), this crime is punishable by no less than twenty (20) years mandatory total confinement imprisonment without availability of furlough, work release, earned release time, or other leave of absence from confinement during such minimum twenty (20) year term except for emergency medical treatment or an extraordinary medical placement under RCW 9.94A.728(4).
>
> . . . .

Clerk's Papers (CP) at 21-22.

¶9 The trial court held a pretrial CrR 3.5 hearing on whether to suppress Hahn's statements made to police officers and to Livengood in the jail. The trial court denied Hahn's request to suppress the statements, largely due to his waiver of his right to counsel.

¶10 Several witnesses testified at trial, including Livengood and Hendricksen. The State asked Livengood whether he had any doubt what Hahn wanted to have happen to S.M.:

[STATE]: This is going to be the last one—was there ever any doubt in your mind, Mr. Livengood, specifically what the Defendant wanted to [have] happen to [S.M.]?

[DEFENSE COUNSEL]: Objection—

[LIVENGOOD]: None whatsoever.

[COURT]: Overruled.

RP (Oct. 26, 2009) at 69. And the State also asked Livengood his opinion on whether Hahn was serious about having S.M. killed:

[LIVENGOOD]: He asked me if I knew of anyone who could—well, he initially asked me if I had any Mafia connections and I said Mexican Mafia just kind of joking around. And he said well—and I said why and he said—he claimed that he wanted to have his victim hurt, or, you know, killed.

[STATE]: Have you ever heard that type of talk before when you've been in jail?

[LIVENGOOD]: Yes, I have.

[STATE]: Is it uncommon?

[LIVENGOOD]: Not at all.

[STATE]: Did you ever do anything about it before?

[LIVENGOOD]: No, ma'am.

[STATE]: Did you this time?

[LIVENGOOD]: Yes, ma'am.

[STATE]: Why, what was different?

[LIVENGOOD]: The difference is that I believe that he was serious with what he was talking about.

RP (Oct. 26, 2009) at 20-21. Further, the State asked Hendrickson if it sounded like Hahn wanted S.M. dead:

[STATE]: And Mr. Hendricksen, didn't you tell the officers that it really sounded like [Hahn] wanted [S.M.] dead?

[HENDRICKSON]: Yeah, yeah I did.

RP (Oct. 26, 2009) at 106.

¶11 Before closing argument, Hahn requested that the trial court provide the jury with a lesser included instruction on solicitation of fourth degree assault. The trial court denied Hahn's request. And the jury found Hahn guilty as charged. He now appeals.

## ANALYSIS

¶12 Hahn raises several issues on appeal, including that (1) the amended information in the case failed to properly charge a crime and violated his right to notice, (2) statements he made to police were obtained in violation of his right to counsel, (3) the trial court erred in refusing to instruct the jury on the lesser included offense of solicitation of fourth degree assault, (4) the State offered improper opinion testimony, (5) he received ineffective assistance of counsel, and (6) the criminal solicitation statute is unconstitutionally overbroad. We agree that the trial court should have given a lesser included jury instruction.[2]

### FAULTY FIRST AMENDED INFORMATION

¶13 At the outset, Hahn contends that the first amended information in this case failed to charge a crime and violated his right to notice under various provisions of the United States and Washington constitutions. In order to be sufficient, a charging document must include all essential elements, statutory or otherwise, of the crime charged. *State v. Tinker*, 155 Wn.2d 219, 221, 118 P.3d 885 (2005). This affords the accused notice of the nature and cause of the accusation against him and allows him to properly prepare a defense. *Tinker*, 155 Wn.2d at 221; *State v. Goodman*, 150 Wn.2d 774, 784, 83 P.3d 410 (2004). "An 'essential element is one whose specification is necessary to

---

[2] Because we reverse and remand on the lesser included instruction issue, we consider only those issues that are sure to remain following remand. Thus, we do not reach Hahn's improper opinion testimony or ineffective assistance of counsel arguments.

establish the very illegality of the behavior,' but the charging document need not repeat the exact language of the statute." *Tinker*, 155 Wn.2d at 221 (citation omitted) (quoting *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992)).

¶14 If the defendant challenges the information before the verdict, the trial court must strictly construe the document to determine whether all of the crime's elements are included. *Tinker*, 155 Wn.2d at 221. But where, as here, the defendant challenges the charging document for the first time on appeal, we liberally construe it in favor of validity. *Goodman*, 150 Wn.2d at 787. Our Supreme Court has adopted a two-prong test to determine whether an unchallenged charging document is insufficient: " '(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?' " *Goodman*, 150 Wn.2d at 788 (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 105-06, 812 P.2d 86 (1991)).

¶15 Hahn first argues that the first amended information was legally deficient because it omitted the essential elements of the underlying offense, first degree murder. Specifically, Hahn states that the charging document did not make clear that the completed crime requires proof that the accused person "cause[d] the death of [another] person . . . ." Br. of Appellant at 14 (some alterations in original). Under RCW 9A.28.030(1),

> A person is guilty of criminal solicitation when, with intent to promote or facilitate the commission of a crime, he offers to give or gives money or other thing of value to another to engage in specific conduct which would constitute such crime or which would establish complicity of such other person in its commission or attempted commission had such crime been attempted or committed.

And under RCW 9A.32.030(1), "A person is guilty of murder in the first degree when . . . [w]ith a premeditated intent to

cause the death of another person, he or she causes the death of such person or of a third person."

¶16 This argument appears to be entirely without merit, as the relevant language in the amended information provided:

> On or about the period of time between May 15 and May 22, 2008, in the County of Clallam, State of Washington, the above-named Defendant, with intent to promote or facilitate the commission of First Degree Murder, to-wit: with a premeditated intent to cause the death of another person, to-wit: S.M[.], offered to give or gave money or other thing of value to another to engage in specific conduct which would constitute such crime and/or would establish complicity of such person in its commission or attempted commission had such crime been attempted or committed; contrary to Revised Code of Washington [RCW] 9A.28.030 and RCW 9A.32.030(1)(a), a class A felony.

CP at 21. The amended information adequately reflects the essential elements of both criminal solicitation and first degree murder. Thus, Hahn's argument fails.

¶17 Hahn also argues that the first amended information was factually deficient because it failed to allege specific conduct constituting solicitation of first degree murder. Specifically, Hahn argues the information's facts were deficient because (1) it did not specify whether Hahn "offered to give" or "gave" something to solicit the crime and did not identify what was offered or given, (2) it did not identify the individual Hahn was alleged to have solicited, and (3) it did not set forth the "specific conduct" Hahn was alleged to have solicited from this other person. Br. of Appellant at 15.

¶18 As Hahn suggests, the information must not only describe the elements of the crime charged but also must describe the specific conduct of the defendant that allegedly constituted that crime. *City of Auburn v. Brooke*, 119 Wn.2d 623, 630, 836 P.2d 212 (1992). But in this case, the necessary facts appear in the charging document, including that Hahn offered something of value in exchange

for S.M.'s murder. And Hahn has not demonstrated that he was actually prejudiced by the language in the information that he argues resulted in a lack of notice. Thus, Hahn's argument fails.

RIGHT TO COUNSEL

█ ¶19 Hahn next contends that his statements to the police and their agents were obtained in violation of his right to counsel because Hahn was already represented in a prosecution closely related to the crime charged. A denial of Sixth Amendment rights is reviewed de novo. *State v. Iniguez*, 167 Wn.2d 273, 280, 217 P.3d 768 (2009). The Sixth Amendment guarantees a defendant assistance of counsel. U.S. CONST., amend. VI. Article I, section 22 of the Washington Constitution also guarantees such assistance.

¶20 Hahn asks us to conduct a *Gunwall*[3] analysis and find that article I, section 22 of the Washington Constitution provides greater protections than the Sixth Amendment to the United States Constitution. Specifically, Hahn urges us to adopt a now-abrogated standard established in *United States v. Arnold*, 106 F.3d 37 (3d Cir. 1997), *abrogated by Texas v. Cobb*, 532 U.S. 162, 121 S. Ct. 1335, 149 L. Ed. 2d 321 (2001).

¶21 *Arnold* involved a defendant, working as an armored car courier for Federal Armored Express, who stole $65,000. *Arnold*, 106 F.3d at 38. Arnold subsequently told his fiancée about the theft. *Arnold*, 106 F.3d at 38-39. Arnold continued to steal additional money and told his fiancée about it. *Arnold*, 106 F.3d at 38-39. Eventually, Arnold feared that his fiancée would tell the FBI (Federal Bureau of Investigation) about the crimes, so Arnold told a few individuals that he would pay someone up to $20,000 to kill her. *Arnold*, 106 F.3d at 39. One of those individuals reported Arnold's offer to the FBI. *Arnold*, 106 F.3d at 39. The FBI used this individual as part of a sting operation and recorded a

---

[3] *State v. Gunwall*, 106 Wn.2d 54, 64-65, 720 P.2d 808 (1986).

meeting between the individual and Arnold. *Arnold*, 106 F.3d at 39.

¶22 The next day, the government obtained a sealed indictment against Arnold, charging him with bank theft, money laundering, and witness intimidation based on his threat to kill his fiancée if she provided information to law enforcement about the thefts. *Arnold*, 106 F.3d at 39. Later that day, Arnold met with the same individual and an undercover officer posing as a hit man. *Arnold*, 106 F.3d at 39. After Arnold again agreed to pay $20,000 to have his fiancée killed, the FBI arrested him and seized the money. *Arnold*, 106 F.3d at 39. Then the government obtained a superseding indictment charging Arnold with the additional count of attempted murder of a witness. *Arnold*, 106 F.3d at 39. The government played the tape recording at trial. *Arnold*, 106 F.3d at 39. Ultimately, the court held that Arnold's Sixth Amendment right to counsel carried over to the closely related but uncharged attempted murder charge once it attached with respect to the charged offense and that the tape recording of the incriminating statements was inadmissible with respect to the murder charge. *Arnold*, 106 F.3d at 39.

¶23 More recently in *Cobb*, the United States Supreme Court moved away from this "closely related" standard applied in *Arnold*, opting for a narrower approach. 532 U.S. at 164. Now the Sixth Amendment right to counsel attaches to charged offenses, and there is no exception for uncharged crimes that are "factually related" to a charged offense. *Cobb*, 532 U.S. at 164. The Sixth Amendment right to counsel also attaches to offenses that even if not formally charged, would be considered the same offense under the *Blockburger*[4] test. *Cobb*, 532 U.S. at 164.

---

[4] *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed 306 (1932). Under the *Blockburger* test, when the relevant statutes do not expressly disclose legislative intent to treat the charged crimes as the same offense, we determine whether the charged crimes are the same in law and fact. *See In re Pers. Restraint of Orange*, 152 Wn.2d 795, 816-17, 100 P.3d 291 (2004). The Blockburger test is a rule of statutory construction used to discern legislative purpose. *State v. Calle*, 125 Wn.2d 769, 778, 888 P.2d 155 (1995). We must answer two questions as part

¶24 Post-*Cobb*, our Supreme Court declined to consider whether, under *Gunwall*, article I, section 22 of the Washington Constitution requires a different test than the one articulated in *Cobb*. *State v. Gregory*, 158 Wn.2d 759, 820, 147 P.3d 1201 (2006). On November 2, 1998, Gregory was in police custody after arraignment on charges that he raped R.S. *Gregory*, 158 Wn.2d at 818. Suspecting Gregory's involvement in another crime years earlier, Tacoma police detectives transported Gregory from the Pierce County jail to an interview room in a Tacoma police department. *Gregory*, 158 Wn.2d at 818. The detectives read Gregory his *Miranda* rights, questioned him about an unrelated and still uncharged shooting, and then questioned him about the rape and murder of G.H. *Gregory*, 158 Wn.2d at 818. At the time, Gregory was represented by counsel on the R.S. rape charges, but police did not contact counsel nor invite counsel to the interview. *Gregory*, 158 Wn.2d at 818-19.

¶25 The State ultimately charged Gregory with G.H.'s murder. *Gregory*, 158 Wn.2d at 812. At trial, one of the detectives testified that during the interview, Gregory refused to be audiotaped, but he stated that he thought DNA (deoxyribonucleic acid) evidence was good evidence and he became sullen after he was accused of raping and murdering G.H. *Gregory*, 158 Wn.2d at 819. A jury convicted Gregory of the murder of G.H. *Gregory*, 158 Wn.2d at 812. On appeal, Gregory argued that the interrogation without his counsel present violated his constitutional rights. *Gregory*, 158 Wn.2d at 819. Gregory implored our Supreme Court to conduct a *Gunwall* analysis, adopt the pre-*Cobb* "closely related" test, and hold that because Gregory was in custody and already represented by counsel, he should not have been questioned regarding the other case without his attorney present. *Gregory*, 158 Wn.2d at 818-19. Our Su-

of its analysis—whether the two charged crimes arose from the same act and, if so, whether the evidence supporting conviction of one crime was sufficient to support conviction of the other crime. *Orange*, 152 Wn.2d at 820. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.

preme Court declined to do so, reasoning that even if it were to adopt the "closely related" test, the rape of R.S. and the rape and murder of G.H. were not closely related.[5] *Gregory*, 158 Wn.2d at 820.

¶26 Even if we were to adopt the pre-*Cobb* "closely related" test, the two charges in this case, as in *Gregory*, are not closely related. Crimes that have been deemed "closely related" generally "involved the same course of conduct, the same cast of characters, were closely related in time, and/or occurred at the same location." *Gregory*, 158 Wn.2d at 820. In Hahn's case, the only unifying fact is that both crimes involved the same victim. The crimes here are clearly separate under the *Blockburger* test, were not closely related in time, and did not occur at the same location. Thus, Hahn's argument fails.

CRIMINAL SOLICITATION STATUTE

¶27 Hahn also contends that the criminal solicitation statute is overbroad because it punishes constitutionally protected speech in violation of the First and Fourteenth Amendments to the United States Constitution. Under RCW 9A.28.030(1),

> A person is guilty of criminal solicitation when, with intent to promote or facilitate the commission of a crime, he offers to give or gives money or other thing of value to another to engage in specific conduct which would constitute such crime or which would establish complicity of such other person in its commission or attempted commission had such crime been attempted or committed.

A statute is overbroad if it chills or sweeps within its prohibition constitutionally protected free speech activities. *City of Bellevue v. Lorang*, 140 Wn.2d 19, 26, 992 P.2d 496 (2000); *State v. Halstien*, 122 Wn.2d 109, 122, 857 P.2d 270 (1993). "A statute which regulates behavior, and not pure

---

[5] Specifically, our Supreme Court acknowledged that the crimes (1) involved different victims, (2) occurred more than two years apart, and (3) occurred in different locations. *Gregory*, 158 Wn.2d at 820.

speech, 'will not be overturned as overbroad unless the overbreadth is both real and substantial in relation to the ordinance's plainly legitimate sweep.' " *City of Seattle v. Webster*, 115 Wn.2d 635, 641, 802 P.2d 1333 (1990) (internal quotation marks omitted) (quoting *City of Seattle v. Eze*, 111 Wn.2d 22, 31, 759 P.2d 366 (1988)). " 'Criminal statutes require particular scrutiny and may be facially invalid if they make unlawful a substantial amount of constitutionally protected conduct.' " *Lorang*, 140 Wn.2d at 27 (internal quotation marks omitted) (quoting *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989)). This standard is very high and speech will be protected unless shown likely to produce a clear and present danger of a serious substantive evil that rises far and above public inconvenience, annoyance, or unrest. *Lorang*, 140 Wn.2d at 27.

¶28 The threshold inquiry in the overbreadth analysis is whether the statute prohibits a substantial amount of constitutionally protected speech. *Huff*, 111 Wn.2d at 925. On its face, RCW 9A.28.030 clearly does not prohibit a substantial amount of speech; rather, it prohibits only remuneration in exchange for the commission or attempted commission of a crime. Thus, Hahn's argument fails.

LESSER INCLUDED INSTRUCTION

¶29 Hahn contends that his conviction must be reversed because the trial court refused to instruct the jury on the lesser included offense of solicitation of assault in the fourth degree. The right to present a lesser included offense instruction to the jury is statutory. RCW 10.61.006; RCW 10.61.010; *State v. Bowerman*, 115 Wn.2d 794, 805, 802 P.2d 116 (1990). A defendant is entitled to a lesser included offense instruction if (1) each of the elements of the lesser offense is a necessary element of the offense charged (legal prong) and (2) the evidence in the case supports an inference that the lesser crime was committed (factual prong). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The State conceded at oral argument that solicita-

tion of assault in the fourth degree meets the legal prong of the *Workman* test and that the focus of our analysis in this case rests on the factual prong. We accept the State's concession and deem the legal prong to be met in this case.

¶30 Turning to the factual prong, we must determine whether the evidence supports an inference that only the lesser crime of solicitation to commit fourth degree assault was committed. Hahn never directly said that he wanted S.M. murdered. He stated only that he wanted her to "disappear," which, depending on the circumstances, could mean a number of things, including fourth degree assault.[6] Hahn also maintained throughout police questioning and at trial that he never intended to have her murdered and that he thought "Miguel" would only scare S.M. The evidence here, when viewed in the light most favorable to Hahn, supports an inference that the lesser included offense of fourth degree assault was committed. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011). Thus, we reverse Hahn's conviction because the trial court denied Hahn's request for the lesser included offense jury instruction under the facts of this case.

¶31 Reversed and remanded.

ARMSTRONG and HUNT, JJ., concur.

Review granted March 15, 2012.

---

[6] A person is guilty of fourth degree assault if he commits an assault under circumstances not amounting to first, second, or third degree assault. RCW 9A.36.041(1).