# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                          )    DIVISION ONE
           Respondent, )
                          )    No. 67726-8-I
           v. )
                          )    UNPUBLISHED OPINION
E.J.J., )
D.O.B. 11/29/93 )
                          )
           Appellant. )    FILED: March 4, 2013
                          )

DWYER, J. — E.J.J., a juvenile at the time of his adjudication, was found guilty by the trial court of obstructing a law enforcement officer based upon an incident in which police officers were called by his mother to their home due to the behavior of E.J.J.'s highly intoxicated sister. On appeal, E.J.J. contends that the obstruction statute, RCW 9A.76.020(1), is facially overbroad because, he asserts, it prohibits constitutionally protected speech. He further contends that insufficient evidence supports his adjudication of guilt. Finally, E.J.J. asserts that the obstruction statute is unconstitutional as applied because, he alleges, his actions were protected by various constitutional provisions.

Because our Supreme Court has construed the obstruction statute to require conduct in addition to pure speech, E.J.J.'s facial overbreadth challenge fails. Moreover, based upon the evidence presented, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt.

Thus, sufficient evidence supports E.J.J.'s adjudication of guilt. Finally, with regard to his as-applied challenge, E.J.J. did not raise in the trial court the alleged constitutional infirmities that he asserts on appeal; nor did he challenge the lawfulness of his arrest or seek to exclude the presentation of any evidence that was admitted. On appeal, his contention is limited to his assertion that his words and actions could not result in a constitutionally valid conviction. Accordingly, in reviewing E.J.J.'s as-applied challenge, we determine whether the obstruction statute is unconstitutional as applied to those of E.J.J.'s actions the evidence of which was necessary to establish the elements of the offense. In other words, we examine whether the challenged statute was applied so as to criminalize speech or conduct that could not constitutionally be criminalized. After such consideration, we conclude that E.J.J.'s as-applied challenge lacks merit. Accordingly, we affirm the trial court's disposition.

I

Geraldine Johnson called the police to her home on the evening of February 14, 2011. Her juvenile daughter, R., was attempting to fight with Johnson and to break the windows of the home with rocks. Officers Barreto, Jenkins, and Mullins responded to the scene, where, Officer Barreto later testified, they found R. to be "highly intoxicated" and "very belligerent." For several minutes, the officers attempted "to calm her down while [they] worked out the situation between her and her mother."

According to Officer Jenkins, "just as things kind of started to settle," E.J.J., R.'s 17-year-old brother, stepped outside of the home and approached R.

- 2 -

and the officers. Officer Jenkins informed E.J.J. that the officers were "in the middle of an active investigation" and asked him to go back inside the house and close the door. Although the officer repeated this request "four or five times," E.J.J. refused to comply. Indeed, E.J.J. became "hostile" when the officer made this request. According to Officer Barreto, E.J.J.'s presence made it "very difficult" to calm his sister, and, as a result of his presence, the scene "escalated very quickly into a very hostile situation." Officer Jenkins similarly testified that, although R. had become calm, she "began to escalate" when E.J.J. came outside. Officer Jenkins described E.J.J. as "irate" during this exchange, calling the officers names, yelling, and using profanity. E.J.J. was advised by the officers that he could be "arrested for obstructing" if he refused to comply with their orders.

Eventually, Officer Jenkins, without touching E.J.J., escorted him back to the house. The officer then asked E.J.J. multiple times to close the door to the house, and E.J.J. repeatedly refused. Several times, Officer Jenkins closed the door, and E.J.J. reopened it. The home had two doors, an outer "wrought iron door" that someone inside the home could see through and an inner "solid door." Officer Jenkins wanted E.J.J. to close the solid door because, when only the wrought iron door was closed, E.J.J. "was still able to see what we were doing." This concerned the officer because if E.J.J. "chose to harm us, he'd have the ability to do so without us knowing." The officers had searched neither E.J.J. nor the home for weapons. Several feet away from the doorway was a window through which someone standing inside the home could see the area in which

- 3 -

the officers and R. were located.

The exchange between the officers and E.J.J. lasted for approximately 20 minutes before Officer Jenkins arrested E.J.J. E.J.J. was thereafter charged with obstructing a law enforcement officer in violation of RCW 9A.76.020(1).

An adjudication hearing was held on August 23, 2011. E.J.J. testified that he approached R. and the officers after seeing an officer take out a "nightstick," with which E.J.J. thought the officer was going to hit his sister. He stated that he wasn't trying to "intervene" in the situation, but that he wanted to "observe" and "supervise" to ensure that his sister was safe. E.J.J. did not deny calling the officers "inappropriate names," but he stated that the officers were also shouting profanities at him.

Following the adjudication hearing, the trial court entered findings of fact and conclusions of law. The court concluded that the State had proved beyond a reasonable doubt the elements of obstructing a law enforcement officer and, accordingly, determined E.J.J. to be guilty as charged.

E.J.J. appeals.

II

E.J.J. contends that the statute criminalizing obstructing a law enforcement officer, RCW 9A.76.020(1), prohibits a substantial amount of constitutionally protected speech and, accordingly, is facially overbroad. However, our Supreme Court has construed the obstruction statute to require conduct, in addition to pure speech, in order to avoid such a constitutional infirmity. State v. Williams, 171 Wn.2d 474, 251 P.3d 877 (2011). Thus, E.J.J.'s

- 4 -

overbreadth challenge fails.

"A statute is overbroad if it chills or sweeps within its prohibition constitutionally protected free speech activities." State v. Hahn, 162 Wn. App. 885, 900, 256 P.3d 1267 (2011), rev'd on other grounds, 174 Wn.2d 126, 271 P.3d 892 (2012). Such overbreadth, however, must be "substantial"; the United States Supreme Court has "repeatedly emphasized that where a statute regulates expressive conduct, the scope of the statute does not render it unconstitutional unless its overbreadth is not only 'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" Osborne v. Ohio, 495 U.S. 103, 112, 100 S. Ct. 1691, 109 L. Ed. 2d 98 (1990) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)). Thus, we have held that, "[w]hen analyzing a statute for overbreadth, the key determination is 'whether the enactment reaches a substantial amount of constitutionally protected conduct.'" State v. Dyson, 74 Wn. App. 237, 242, 872 P.2d 1115 (1994) (internal quotation marks omitted) (quoting City of Seattle v. Huff, 111 Wn.2d 923, 925, 767 P.2d 572 (1989)). See also Hahn, 162 Wn. App. at 901 (holding that criminal solicitation statute is not overbroad because it "does not prohibit a substantial amount of speech"). "Even where a statute at its margins infringes on protected expression, 'facial invalidation is inappropriate if the remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct.'" Osborne, 495 U.S. at 112 (alterations in original) (internal quotation marks omitted) (quoting New York v. Ferber, 458 U.S. 747, 770 n.25, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982)).

Moreover, a statute may survive overbreadth scrutiny where the state supreme court has placed a limiting construction upon the statute, thus restricting its scope to unprotected conduct. Osborne, 495 U.S. at 112-14. In Osborne, the defendant challenged his conviction pursuant to an Ohio statute prohibiting the possession of child pornography, asserting that the statute was overbroad under the First Amendment. 495 U.S. at 107. However, as the United States Supreme Court noted, the Ohio Supreme Court, relying on statutory exceptions, read the statute "as only applying to depictions of nudity involving a lewd exhibition or graphic focus on a minor's genitals." Osborne, 495 U.S. at 107. Accordingly, the state supreme court affirmed Osborne's conviction. Osborne, 495 U.S. at 107. Evaluating the statute as construed by the state supreme court, the United States Supreme Court similarly rejected Osborne's First Amendment arguments, holding that "Osborne's overbreadth challenge, in any event, fails because the statute, as construed by the Ohio Supreme Court on Osborne's direct appeal, plainly survives overbreadth scrutiny." Osborne, 495 U.S. at 112-13. The Court explained that it has "long respected" the ability of state supreme courts "to narrow state statutes so as to limit the statute's scope to unprotected conduct." Osborne, 495 U.S. at 120.

Here, E.J.J. challenges the constitutionality of our state's obstruction statute, which provides: "A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1). He asserts that the statute is unconstitutionally overbroad

because, he contends, it prohibits a substantial amount of protected speech.

Our Supreme Court, however, has construed the obstruction statute to avoid such a constitutional infirmity, adhering to its "jurisprudential history of requiring conduct in addition to pure speech in order to establish obstruction of an officer." Williams, 171 Wn.2d at 485. There, Williams was convicted of obstructing a law enforcement officer when, in an apparent attempt to prevent a police officer from discovering an outstanding warrant, he gave his brother's name, instead of his own, to the officer. Williams, 171 Wn.2d at 475. Williams appealed from his conviction, asserting that legislative history and decisional authority demonstrate that the statute requires some conduct in addition to making false statements. Williams, 171 Wn.2d at 475.

Following an extensive review of case law interpreting the former and current obstruction statutes, the court concluded that conduct is required in addition to pure speech to support a conviction for obstructing a law enforcement officer. Williams, 171 Wn.2d at 478-86. The court determined that, in enacting RCW 9A.76.020, our legislature was aware that "in order to find obstruction statutes constitutional, appellate courts of this state have long required conduct." Williams, 171 Wn.2d at 485. Our courts have required such conduct, the court explained, in part due to "concern that criminalizing pure speech would implicate freedom of speech." Williams, 171 Wn.2d at 485; see also State v. Budik, 173 Wn.2d 727, 735-36, 272 P.3d 816 (2012) (citing Williams in holding that mere false disavowal of knowledge was insufficient to support a conviction for rendering criminal assistance and, instead, an affirmative act was required);

- 7 -

State v. Grant, 89 Wn.2d 678, 685-86, 575 P.2d 210 (1978) (holding that former obstruction statute, the language of which is almost identical to that of the current statute, "focuses on conduct other than speech"). Thus, the court held that, "[i]n order to avoid constitutional infirmities, we require some conduct in addition to making false statements to support a conviction for obstructing an officer." Williams, 171 Wn.2d at 486.

Nevertheless, E.J.J. contends that the statute is overbroad because it "criminalizes any speech, so long as that speech, together with conduct, 'hinders, delays, or obstructs' a law enforcement officer." Appellant's Br. at 28 (quoting RCW 9A.76.020(1)). This contention, however, fails to recognize that conduct may be constitutionally regulated "even though intertwined with expression and association." Cox v. Louisiana, 379 U.S. 559, 563, 85 S. Ct. 476, 13 L. Ed. 2d 487 (1965) (holding that statute prohibiting "picketing and parading" near a courthouse did not infringe upon the constitutionally protected rights of free speech and free assembly). Indeed, the "examples are many of the application" by the United States Supreme Court "of the principle that certain forms of conduct mixed with speech may be regulated or prohibited." Cox, 379 U.S. at 563. "'[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" Cox, 379 U.S. at 563 (quoting Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502, 69 S. Ct. 684, 93 L. Ed. 834 (1949)).

Moreover, the case to which E.J.J. cites in support of his overbreadth

- 8 -

challenge, City of Houston, Tex. v. Hill, 482 U.S. 451, 107 S. Ct. 2502, 96 L. Ed.
2d 398 (1987), is inapposite. There, Hill challenged as overbroad a city
ordinance making it "'unlawful for any person to . . . in any manner oppose,
molest, abuse or interrupt any policeman in the execution of his duty.'" Hill, 482
U.S. at 461 (quoting Code of Ordinances, City of Houston, Tex., §§ 34-11(a)
(1984)). The evidence showed that the ordinance had been employed to make
arrests for "'arguing,' '[t]alking,' '[i]nterfering,' '[f]ailing to remain quiet,' '[r]efusing
to remain silent,' '[v]erbal abuse,' 'cursing,' '[v]erbally yelling,' and '[t]alking loudly,
[w]alking through the scene.'" Hill, 482 U.S. at 457 (quoting Hill v. City of
Houston, Tex., 789 F.2d 1103, 1113-14 (5th Cir. 1986)).[1] The Supreme Court
invalidated the ordinance, determining that the ordinance, which prohibited
"verbal interruptions of police officers," dealt "not with core criminal conduct, but
with speech." Hill, 482 U.S. at 460-61. Importantly, the Court determined that
the ordinance at issue in Hill had "'received a virtually open-ended interpretation'"
and, thus, was "susceptible of regular application to protected expression." 482
U.S. at 466-67 (quoting Lewis v. City of New Orleans, 415 U.S. 130, 136, 94 S.
Ct. 970 (1974) (Powell, J., concurring in the result)). Moreover, the Court
concluded that the ordinance was unambiguous and, thus, not susceptible to a
limiting construction: "The enforceable portion of this ordinance is a general
prohibition of speech that 'simply has no core' of constitutionally unprotected
expression to which it might be limited." Hill, 482 U.S. at 468-69 (quoting Smith

---

[1] Indeed, Hill himself was arrested for "'wilfully or intentionally interrupt[ing] a city
policeman . . . by verbal challenge during an investigation.'" Hill, 482 U.S. at 454.

- 9 -

v. Goguen, 415 U.S. 566, 578, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974)). Thus, the Court held that the ordinance "criminalize[d] a substantial amount of constitutionally protected speech" and, accordingly, was unconstitutionally overbroad. Hill, 482 U.S. at 466.

In contrast, the obstruction statute challenged here has been construed by our Supreme Court to require conduct in addition to speech in order to establish the offense.[2] Williams, 171 Wn.2d at 485. As in Osborne, this construction narrows the obstruction statute "so as to limit the statute's scope to unprotected conduct." 495 U.S. at 120. Moreover, a statute is not rendered unconstitutional unless its overbreadth is both real and substantial in relation to its "'legitimate sweep.'" Osborne, 495 U.S. at 112 (quoting Broadrick, 413 U.S. at 615). Because the obstruction statute does not reach a substantial amount of constitutionally protected conduct, it is not, as E.J.J. contends, unconstitutionally overbroad.[3]

---

[2] E.J.J. asserts that "the caselaw shows that speech is frequently criminalized under [the obstruction] statute when the speech accompanies conduct." Appellant's Br. at 25. E.J.J. cites to only two cases in support of this assertion, State v. Contreras, 92 Wn. App. 307, 966 P.2d 915 (1998), and State v. Williamson, 84 Wn. App. 37, 924 P.2d 960 (1996), and neither case demonstrates that speech is "frequently criminalized" pursuant to RCW 9A.76.020(1). In Contreras, the court held that the defendant's refusal to answer questions was not sufficient to support his obstruction conviction; rather, the court upheld the conviction based upon Contreras's conduct of disobeying the officer's orders to put his hands in view, exit the car in which he was sitting, and keep his hands on top of the car, and giving the officer a false name. 92 Wn. App. at 316. In Williamson, the court did not address the defendant's challenge to the sufficiency of the evidence because the court reversed the obstruction conviction on the basis of a defective information. 84 Wn. App. at 46.

[3] To the extent that the obstruction statute may interfere with an individual's constitutionally protected right to free speech, we note that "the exercise of that right, even in public forums, is subject to valid time, place, and manner restrictions." City of Seattle v. Abercrombie, 85 Wn. App. 393, 399, 945 P.2d 1132 (1997) (upholding the City of Seattle's obstruction ordinance against an overbreadth challenge). Such restrictions are valid so long as they "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" City of Seattle v. Huff, 111 Wn.2d

III

E.J.J. additionally contends that there was insufficient evidence to support his adjudication of guilt for obstructing a law enforcement officer. Because, based upon the evidence presented, any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt, we disagree.

When reviewing a challenge to the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). This standard of review is so oft-repeated that lawyers and judges infrequently consider the meaning of its words. The purpose of the standard is to ensure that the fact finder "rationally appl[ied]" the constitutional standard required by the due process clause of the Fourteenth Amendment, which allows for conviction of an offense only upon proof beyond a reasonable doubt. Jackson, 443 U.S. at 317-18. In other words, the Jackson standard is designed to ensure that the defendant's due process right in the trial court was properly observed. Pursuant to the Jackson standard, we look neither to the particular fact finder in the case nor to the specific theory of the case presented by the State.[4] Rather, we look to the evidence admitted at trial to

_____

923, 926, 767 P.2d 572 (1989) (internal quotation marks omitted) (quoting Bering v. Share, 106 Wn.2d 212, 222, 721 P.2d 918 (1986)).

[4] Whether the trier of fact was a jury or, as here, a judge "is of no constitutional significance." Jackson, 443 U.S. at 317 n.8. Indeed, in Jackson itself the Supreme Court

determine whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could conclude that the elements of the offense were proved beyond a reasonable doubt.

Here, E.J.J. challenges the sufficiency of the evidence for his adjudication of guilt for obstructing a police officer. The obstruction statute provides that "[a] person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1).

> "The statute's essential elements are (1) that the action or inaction in fact hinders, delays, or obstructs; (2) that the hindrance, delay, or obstruction be of a public servant in the midst of discharging his [or her] official powers or duties; (3) knowledge by the defendant that the public servant is discharging his [or her] duties; and (4) that the action or inaction be done knowingly by the obstructor[.]"

State v. Contreras, 92 Wn. App. 307, 315-16, 966 P.2d 915 (1998) (quoting State v. CLR, 40 Wn. App. 839, 841-42, 700 P.2d 1195 (1985)). Because a rational fact finder could determine that these elements were proved beyond a reasonable doubt, the evidence is sufficient to support E.J.J.'s adjudication of guilt.

The State presented evidence, through the testimony of Officers Barreto and Jenkins, that E.J.J. approached the scene just as the officers were beginning to successfully calm R. from her agitated state. E.J.J. did not simply stand near R. and the officers; rather, he was "irate," yelling, using profanity, and calling the

---

reviewed a conviction resulting from a bench trial. 443 U.S. at 317 n.8. On the other hand, in the first Washington case to apply the Jackson standard, the conviction at issue resulted from a jury's verdict. State v. Green, 94 Wn.2d 216, 616 P.2d 628 (1980).

officers names. According to the testimony, E.J.J.'s presence caused R. to again become agitated, resulting in the escalation of the situation into a "very hostile" one. E.J.J. then refused to comply with Officer Jenkins' repeated requests that he go back inside the house. Finally, Officer Jenkins was compelled to escort E.J.J. back to the house.

Viewed in the light most favorable to the prosecution, sufficient evidence supports a determination that, at this point, E.J.J. had hindered or delayed the officers in performing their official duties. Accordingly, based upon this evidence, any rational fact finder could determine beyond a reasonable doubt that E.J.J. was guilty of obstructing a law enforcement officer in violation of RCW 9A.76.020(1). E.J.J. was, therefore, not denied due process of law. Whether additional evidence was admitted is of no moment to the determination of the sufficiency of the evidence.[5]

IV

Finally, E.J.J. asserts that the obstruction statute is unconstitutional as applied. Specifically, he contends that his adjudication was based in part on constitutionally protected speech, that he cannot be penalized for conduct occurring within his own home, and that his adjudication violates an alleged substantive due process right to observe police officers performing their official

---

[5] E.J.J. challenges the conduct of the officers after he was escorted back to the house. However, application of the Jackson standard does not necessitate that we consider evidence other than that pertinent to the question of whether the standard was met.

duties.[6] But E.J.J. neither asserted these purported constitutional infirmities in the trial court nor sought to exclude the admission of related evidence. Neither did he challenge the lawfulness of his arrest. Thus, we review his as-applied challenge by determining whether the statute is unconstitutional as applied to evidence of his actions that was necessary to establish the elements of the offense. Because, upon such review, we determine that no speech or conduct was criminalized that could not constitutionally be criminalized, we find E.J.J.'s as-applied challenge to be without merit.

We review de novo challenges to a statute's constitutionality. State v. Steen, 164 Wn. App. 789, 809, 265 P.3d 901 (2011), review denied, 173 Wn.2d 1024 (2012). "An as-applied challenge to the constitutional validity of a statute is characterized by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional." City of Redmond v. Moore, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004). "A decision that a statute is unconstitutional as applied does not invalidate the statute but, rather, prohibits the statute's future application in a similar context." Steen, 164 Wn. App. at 804.

On appeal, E.J.J. contends that his adjudication of guilt was based upon constitutionally protected speech and conduct, and, thus, that the obstruction statute is unconstitutional as applied. He asserts that his adjudication of guilt cannot constitutionally be based upon his speech, conduct occurring while he

---

[6] E.J.J. does not cite to material case law authority in support of his contention that such a constitutional right has been found to exist. We need not examine that question in order to decide this appeal.

was inside his home, or his "observation" of the police officers while they performed their official duties.[7] Neither E.J.J. nor the State, however, briefed on appeal the question, "as applied to what?" Stated differently, to which of E.J.J.'s "actions or intended actions," Moore, 151 Wn.2d at 668-69, was the statute unconstitutionally applied?

To answer this question, we must look to how the case was litigated and briefed by the parties. E.J.J. made no challenge in the trial court to the lawfulness of his arrest; nor did he allege that an unlawful search or seizure had occurred. Moreover, no motion was made and no relief sought to exclude the presentation of the evidence that we have set forth herein. E.J.J. did not challenge the admission of evidence of his speech or his conduct occurring within his home. Nor did E.J.J. assert a substantive due process right to observe the police officers while performing their official duties. Thus, there was no contention in the trial court—nor explicitly on appeal—that due process standards were not observed in the admission of evidence.

Based on the manner in which this case was litigated in the trial court and briefed on appeal, the answer to the question "as applied to what?" is clear— E.J.J.'s only viable as-applied challenge is with respect to the sufficiency of the evidence to support his adjudication of guilt.[8] Thus, we review his challenge by

---

[7] E.J.J. contends that his speech is protected by the First Amendment, that conduct occurring within his home is protected by the Fourth Amendment and article I, section 7 of our state's constitution, and that his "observation" of the police officers is subject to the alleged substantive due process right to observe police officers performing their official duties.

[8] "'[S]ufficiency of the evidence is a question of constitutional magnitude and can be raised initially on appeal.'" State v. Alvarez, 128 Wn.2d 1, 10, 904 P.2d 754 (1995) (alteration in original) (quoting City of Seattle v. Slack, 113 Wn.2d 850, 859, 784 P.2d 494 (1989)).

determining whether, as applied to those of E.J.J.'s actions evidence of which was necessary to establish the elements of the offense, the obstruction statute is unconstitutional. In other words, we determine whether the statute was applied in such a manner that evidence of constitutionally protected speech or conduct must necessarily be relied upon in order to satisfy the Jackson test for sufficiency of the evidence.

As explained above, our Supreme Court held in Williams that the statute lawfully criminalizes conduct in addition to speech. 171 Wn.2d at 485. Accordingly, so long as it is coupled with conduct, a defendant's speech can be considered in determining whether sufficient evidence supports an adjudication or conviction of obstructing a law enforcement officer. Considering evidence allowed by Williams to meet the sufficiency standard set forth in Jackson is not constitutionally prohibited, given that, pursuant to Williams, constitutionally protected conduct is not prohibited by the obstruction statute.

At a bare minimum, the following facts support the trial court's determination that E.J.J. was guilty of obstructing a law enforcement officer: E.J.J. approached the officers and his sister while the officers were engaged in calming R. in order to defuse the situation between R. and her mother. E.J.J.'s presence escalated the situation with R. E.J.J. was "irate," calling the officers names, yelling, and using profanity. E.J.J. refused the officers' repeated requests to leave the scene. Due to E.J.J.'s refusal to comply, an officer was eventually required to escort E.J.J. away from R., back to the house, thus hindering and delaying the officers' ability to calm R. and defuse the situation.

- 16 -

The admission of none of this evidence was prohibited by Williams. This evidence is properly referenced to evaluate the evidence at trial in accordance with the Jackson standard. Thus, the challenged statute was not unconstitutionally applied to the evidence at trial. E.J.J.'s assertion of error must fail.

Affirmed.

We concur: