[No. 86427-6. En Banc.]
Considered March 8, 2012.     Decided March 15, 2012.

THE STATE OF WASHINGTON, *Petitioner*, v. AARON MICHAEL HAHN, *Respondent*.

*Deborah S. Kelly, Prosecuting Attorney,* and *Brian P. Wendt, Deputy,* for petitioner.

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for respondent.

¶1 PER CURIAM — Aaron Hahn asked someone to make a girl "disappear" or appear as if she "never existed" or "just be gone." Hahn was convicted of solicitation to commit first degree murder. The Court of Appeals reversed the conviction, holding that Hahn was entitled to a jury instruction on the lesser included offense of solicitation to commit fourth degree assault. Because the evidence did not support such an instruction, we grant the State's petition for review and reverse the Court of Appeals.

¶2 Hahn was charged with four counts of third degree child rape, sexual exploitation of a minor, possession of depictions of minors engaged in sexually explicit conduct, and stalking. The complaining witness was S.M. While confined in jail awaiting trial, Hahn mentioned to another inmate, Mike Hendrickson, that he wished S.M. were dead and that he would hurt her. Hahn asked Hendrickson if he knew anyone who could "get to" S.M., but Hendrickson said he could not help. Report of Proceedings (Oct. 26, 2009) at 92. Hahn then asked inmate Norman Livengood if he had any mafia connections, stating that he wanted someone hurt or killed. Livengood related the encounter to the police and agreed to cooperate in the resulting investigation. The

police obtained a warrant and wired Livengood to record his conversations with Hahn.

¶3 Livengood told Hahn that he was going to call "Miguel" (an undercover police officer) about Hahn's request. Among the remarks Hahn made to Livengood were that he wanted S.M. to "disappear," that he wanted her to "[d]isappear, make it look like she didn't exist," and that he wanted to "[m]ake it look like she never existed." Ex. 41, at 6. Hahn wondered whether Miguel would ask him to "knock somebody off" in return for making S.M. disappear. *Id.* at 10. Hahn did not disagree with Livengood's statement that Hahn was asking Miguel to do the same thing. Later in the conversation, Livengood asked Hahn again what he wanted "done to the girl." *Id.* at 13. Hahn replied, "Disappear." *Id.* Livengood asked, "You just want her to disappear?" *Id.* Hahn responded, "Just say that, yep." *Id.* He then explained, "That's discreet enough that the cops won't figure it out but [Miguel will] know what I'm talking about." *Id.* Livengood later gave Hahn Miguel's telephone number and told Hahn to call Miguel and discuss the details.

¶4 Hahn called Miguel and told him that he trusted him on however he wanted "to get it done." Ex. 52, at 2. They agreed Miguel would give S.M. an anonymous "gift" or "present." *Id.* Miguel agreed to send Hahn confirmation that the "gift" had been delivered. *Id.* Miguel asked Hahn whether he wanted anyone to know about the gift or "do you want them to not be around once they get it." *Id.* at 3. Hahn answered that only he wanted to know about the gift. Miguel said that he understood but asked again whether Hahn "wanted them to be around or just be gone." *Id.* Hahn answered, "Just, just be gone." *Id.*

¶5 The State charged Hahn with solicitation to commit first degree murder. Hahn's defense was that he asked Miguel to only frighten S.M., and he asked the trial court to instruct the jury on the lesser included offense of solicitation to commit fourth degree assault. The court denied the request, and the jury found Hahn guilty.

¶6 Hahn appealed, arguing among other things that the trial court should have instructed on solicitation to commit fourth degree assault. The Court of Appeals reversed on that issue, holding that the evidence supported giving the instruction. *State v. Hahn*, 162 Wn. App. 885, 256 P.3d 1267 (2011). The court rejected Hahn's other arguments about claimed errors that could recur on retrial, and it declined to consider other issues not likely to again arise. *Id.* at 894-901.

¶7 The State sought review in this court, while Hahn conditionally sought review of other issues. We grant the State's petition only and decline to review the issues Hahn raises.

¶8 A defendant is entitled to a lesser included offense instruction if (1) each element of the lesser offense is a necessary element of the offense charged (legal prong) and (2) the evidence, viewed most favorably to the defendant, supports an inference that only the lesser crime was committed (factual prong). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). Under the common law, a person assaults another by attempting to inflict bodily harm on another (attempted common law battery), by unlawfully touching another with criminal intent (actual battery), or by placing another in apprehension of physical harm (common law assault). *State v. Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320 (1994). Fourth degree assault is essentially an assault with little or no bodily harm, committed without a deadly weapon—so-called simple assault. *See* RCW 9A.36.041(1). The State concedes that the legal prong of the *Workman* test is satisfied here, and we agree. But we hold that the Court of Appeals erred in concluding that the evidence satisfied the factual prong.

¶9 Viewing the evidence in a light favorable to Hahn, there is no evidence or reasonable inference from the evidence that he solicited only the commission of fourth degree assault to the exclusion of solicitation to commit murder. He indicated to fellow inmates that he wanted S.M.

dead or killed. He explicitly stated that he wanted her to "disappear" and to make it seem as if she "did not exist" or "never existed." He did not disagree with Livengood's statement implying that Hahn was asking Miguel to "knock [S.M.] off." And Hahn confirmed with Miguel that he wanted S.M. "gone." The recorded conversation transcripts can be reasonably read in context as only a solicitation to kill S.M. Although the Court of Appeals is correct that the term "disappear" could have nonhomicidal meaning, the inferential leap to mere fourth degree assault is too great even when the evidence is interpreted in Hahn's favor.

¶10 The Court of Appeals is reversed.