# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57486-1-II |
| Respondent, | |
| v. | |
| RICKY LEVALE FULLER, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—After an altercation with his intimate partner, the State charged Ricky Levale Fuller with one count of second degree assault by strangulation. The case proceeded to a jury trial.

After both parties rested, the State proposed an inferior degree jury instruction on fourth degree assault. Fuller objected, contending that no evidence existed to support the instruction. The trial court nevertheless gave the instruction, reasoning that the jury could, based on the evidence submitted, find that a lesser nonstrangulation assault occurred. The jury acquitted Fuller of second degree assault but found him guilty of fourth degree assault.

Fuller appeals his conviction. He argues that the trial court erred in granting the State's request to instruct the jury on fourth degree assault because other than impeachment evidence discrediting the victim, there was no affirmative evidence to support a finding that only a fourth degree assault occurred.

We hold that the trial court did not abuse its discretion when it found that the evidence permitted a jury to rationally find Fuller guilty of fourth degree assault but not second degree assault by strangulation. Thus, the trial court properly gave the fourth degree assault instruction. We affirm Fuller's conviction.

FACTS

Fuller and MH had an intimate relationship. On November 18, 2021, at MH's invitation, Fuller went to her house. Shortly after Fuller arrived, MH confronted him about seeing another woman. The confrontation escalated into a physical altercation, MH's family members intervened, and MH was taken to the hospital.

The State charged Fuller with one count of second degree assault by strangulation and alleged that the crime was committed against an intimate partner.

I. DIFFERENT ACCOUNTS OF THE INCIDENT

At trial, Fuller and MH did not dispute that MH ended up on the ground near the front door and that she was injured. But they disputed how she was injured.

A.      MH's Account of the Incident and Supporting Testimony

MH testified that after she confronted Fuller, Fuller grabbed her neck with his right hand and slammed her down to the floor. She said that she landed really hard on her back. Fuller kept his hand on her neck for "a couple [of] minutes," she had difficulty breathing, and she urinated and defecated on herself. Verbatim Rep. of Proc. (VRP) at 133.

Immediately after the incident, MH said that she felt dizzy and was unable to stand up straight. She experienced pain and swelling in her neck. She also noticed some marks on her neck.

One of MH's sons said that he was about two blocks away when the incident happened. He rushed home after receiving a phone call where he heard his mother screaming for help. When he got home, he observed that MH "couldn't get a word out because she was just in pain so much and scared for her life." VRP at 147. He also noticed that her voice was "a little" different, and she was having difficulty breathing and balancing herself. VRP at 148-49. He smelled the urine and feces on her.

A police officer arrived about 10 minutes after the incident. The police officer testified that when he saw MH, she was "pretty distraught," gasping for breath and struggling to talk. VRP at 175-76. He remembered seeing a one-inch scratch mark and some bruising on the left side of MH's neck. But he did not recall seeing or smelling any urine or feces on her.

After the police arrived, MH was taken to hospital by ambulance. At the hospital, she was told that she had a black bruise on the left side of her neck where Fuller grabbed her.

A forensic examiner with expertise in strangulation explained to the jury that not all cases of strangulation present the same physical symptoms. In general, forensic examiners will look for petechiae (small ruptured blood vessels in the face), bruising, redness, swelling, dizziness, headaches, nausea, vision changes, voice changes, cough, and difficulty in swallowing. The expert also stated that a person might involuntarily urinate or defecate when being strangled.

The forensic examiner noted that bruising and swelling tend to take 24 to 48 hours to appear. For this reason, in practice, external marks are less common signs of strangulation because victims are either seen by medical personnel before the marks appear or long after they have disappeared. In addition to short-term symptoms, strangulation may also have long-term side effects, such as memory problems, increased possibility of strokes, and chronic headaches. The

forensic examiner provided general testimony about strangulation only; she did not examine or treat MH after the incident, and she did not opine about the facts of this case.

B.       Fuller's Account of the Incident

Fuller testified at trial and denied strangling MH or doing anything that might have caused the mark on her neck.

Fuller testified that when MH confronted him about having a relationship with another woman, he stood up to leave. On his way out, MH rammed him and shoved him up against the wall. As MH grabbed his shirt and was about to swing her right hand, Fuller put up his arm to block and pushed her away with his right hand to reach for the door. Then MH tripped over the edge of the chair by the door and fell down to the ground.

On direct examination, Fuller admitted that he pushed MH. He testified that he "went to push [MH] away so [he] could open the door." VRP at 189. He further stated that: "as I [was] pushing her back . . . the end of the chair . . . [was] where she tripped and fell." *Id.* But on cross-examination, he denied having pushed MH. Instead, he said that MH tripping over the chair was "the only way she fell." VRP at 198. Fuller also argued that MH's physical distress and shortness of breath after the altercation resulted from exertion and her preexisting health conditions, including a blood clot issue that MH admitted that she had at the time of the incident.

Fuller said that he had previously been injured in a serious motor vehicle accident in 2017. He stated that the accident initially "immobilized" the right side of his body, including his right hand, and it took him about three years to "learn to use [his] right side." VRP at 190. However, Fuller was able to use his right hand to do basic tasks, such as opening doors. On cross-examination, he said that he was functional enough to drive at the time of the incident.

## II. JURY INSTRUCTIONS AND VERDICT

After both parties rested, the State proposed an inferior degree jury instruction on fourth degree assault, in addition to the charged crime of second degree assault. Fuller objected, contending that his defense was either that a second degree assault occurred or that no assault occurred at all, and there was no evidence to support a fourth degree assault.

The trial court gave the jury instruction over Fuller's objection. The court reasoned that some evidence, including the lack of petechiae and the police officer's testimony about no smell of urine or defecation, might cause the jury to doubt MH's testimony and create a reasonable doubt about whether the strangulation occurred. But the jury could still find that an assault of some level did occur based on the testimony that Fuller pushed MH to the ground.

The jury acquitted Fuller of second degree assault but found him guilty of fourth degree assault. The trial court imposed a sentence of 364 days, close to the maximum sentence for fourth degree assault, but with 363 days suspended.

Fuller appeals his conviction.

## ANALYSIS

### INFERIOR DEGREE INSTRUCTION

When a defendant is charged with "an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto." RCW 10.61.003. An instruction about an inferior degree is proper when "'the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense,'" (the legal prong) and "'there is evidence that the defendant committed only the inferior offense,'" (the factual prong). *State v. Coryell*, 197 Wn.2d 397, 410, 483 P.3d 98

(2021) (internal quotation marks omitted) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)). [1]

The parties agree that the legal prong of the test is satisfied here. The parties dispute whether the evidence in the record satisfies the factual prong of the test. Specifically, they dispute whether affirmative evidence existed to support a rational jury conclusion that only fourth degree assault occurred. We conclude that the trial court properly gave the fourth degree assault instruction.

A.      The Factual Prong of the Test

We review the trial court's resolution of the factual prong of the test for abuse of discretion. *State v. Boswell*, 185 Wn. App. 321, 333, 340 P.3d 971 (2014). An abuse of discretion occurs only when a trial court's exercise of its discretion is manifestly unreasonable or based on untenable grounds or reasons. *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

Recently, in *Coryell,* the Washington Supreme Court acknowledged that some prior case law had generated confusion about the factual prong by stating that "the evidence must raise an inference that only the lesser included/inferior degree offense was committed *to the exclusion of the charged offense*." 197 Wn.2d at 408 (emphasis omitted and added) (quoting *Fernandez Medina,* 141 Wn.2d 448, 455, 6 P.3d 1150 (2000)). As a result, courts were improperly weighing the evidence. *Id.* at 414-15. The *Coryell* court clarified that the factual prong is satisfied if "based on some evidence admitted, the jury could reject the greater charge and return a guilty verdict on the lesser." *Id.* at 407. Some evidence must be presented to affirmatively establish that the

---

[1] The Washington Supreme Court in *Coryell*, reiterated that the factual prong analysis is the same for both lesser included offenses and inferior degree offenses, and it is the factual prong that is in dispute here. 197 Wn.2d at 415.

defendant committed the inferior degree offense; it is not enough that the jury might simply disbelieve the evidence pointing to guilt of the charged crime. *Id.* at 415. Such affirmative evidence can "include evidence elicited on cross-examination, such as impeachment evidence, evidence of bias, or inability to recall." *Id.* at 408.

In *Coryell*, after an altercation with his girlfriend, the defendant was charged with second degree assault by strangulation. *Id.* at 404. At trial, the victim testified that the defendant put his hand around her neck two separate times. The first time did not impact her ability to breathe, whereas the second time did. *Id.* at 417. The defendant denied strangling the victim but admitted that he pinned the victim against a wall. *Id* at 402, 417. He also argued that any force he used did not prevent the victim from breathing, as required by the statutory definition of strangulation. *Id* at 417. The police officer who responded to the incident testified that he saw a roughly two-inch abrasion and signs of welts on the victim's neck, but no petechial hemorrhaging, which was often evidence of strangulation. *Id.* at 403-04. The trial court declined the defendant's request to give an inferior degree jury instruction on fourth degree assault. *Id.* at 404-05.

On appeal, the Washington Supreme Court reversed the trial court's ruling, holding that the evidence supported an inference that the defendant assaulted, but did not strangle, the victim. *Id.* at 418. Based on the evidence submitted including the police officer's testimony about the lack of petechial hemorrhaging and the victim's testimony that she was able to breathe the first time the defendant put his hand around her neck, the jury could have had reasonable doubt about whether the strangulation occurred. *Id* at 417-19. But the jury might have reasonably believed that some level of assault was nevertheless committed, for example, when the defendant pinned his

7

girlfriend against a wall or when he put his hand around her neck the first time, but did not block her blood or airflow. *Id.*

B.      Applying the Factual Prong to the Facts in This Case

Fuller contends that no affirmative evidence existed to warrant the jury instruction for fourth degree assault. He argues that there were "only two options from the evidence at trial:" either Fuller "committed second degree assault by strangulation, or . . . no assault occurred." Br. of Appellant at 15. We disagree.

1.      Elements of the relevant offenses

The State charged Fuller with second degree assault. One way a person can be guilty of second degree assault is if they assault another by strangulation. RCW 9A.36.021(1)(g). "Strangulation" means "to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe." RCW 9A.04.110(26). A person is guilty of fourth degree assault if they assault another. Former RCW 9A.36.041(1) (2020). Fourth degree assault does not include strangulation; instead, it specifically requires circumstances "*not* amounting to" second degree assault. *Id.* (emphasis added). Assault occurs when one unlawfully touches another with criminal intent. *State v. Hahn*, 174 Wn.2d 126, 129, 271 P.3d 892 (2012).

We must determine whether the trial court abused its discretion by concluding that affirmative evidence in the record permitted a jury to rationally find that Fuller assaulted MH but did not strangle her.

2.      Affirmative evidence supporting fourth degree assault

Viewing the evidence in the light most favorable to the State as the party requesting the instruction, the testimonial evidence in this case supported the inference that Fuller committed only fourth degree assault. *Coryell*, 197 Wn.2d at 415.

Both parties submitted evidence that could affirmatively establish a nonstrangulation assault. During his testimony, Fuller admitted that he pushed MH away to open the front door, and then MH tripped over the chair by the door and fell down. MH testified that Fuller shoved her down to the ground near the front door and she fell hard on her back. The testimony of MH's son and the police officer about MH's demeanor immediately after the incident, such as her "distraught" look and her difficulty in speaking, breathing, and balancing herself, could also support the inference that she had been assaulted. VRP at 147-49, 175. Viewing this evidence in the light most favorable to the party requesting the instruction as we must, this amounted to sufficient evidence that Fuller assaulted MH without strangling her.

Fuller, relies on *State v. Brown*, 127 Wn.2d 749, 903 P.2d 459 (1995) to contend that there was not affirmative evidence of fourth degree assault, only testimony that might discredit MH. But *Coryell* is far more relevant than *Brown*.

In *Brown*, the court found no affirmative evidence, only "[i]mpeachment evidence that serve[d] only to discredit" the victim, was offered to support the lesser crime. 127 Wn.2d at 755. Notably, *Coryell* has since explained that evidence "from whatever source," including impeachment evidence elicited on cross-examination, can be presented to affirmatively establish the party's theory on a lesser included or inferior degree offense. 197 Wn.2d at 415. And here, there was affirmative evidence offered in the form of direct testimony that supported the fourth

degree assault instruction, including testimony that Fuller pushed or shoved MH to the ground and she landed hard on her back.

Moreover, like in *Coryell,* here there was evidence that tended to raise reasonable doubt about the charged higher degree offense. And similar to the police officer's testimony about the lack of petechial hemorrhaging, in this case, there was also no evidence of petechiae and the police officer testified he did not recall a smell of urine or defecation. *Id.* at 403. The jury heard that MH had ongoing health problems, which the jury could infer caused her shortness of breath. Like in *Coryell*, this testimony could cast doubt on whether the defendant strangled the victim. *Id.* at 419.

As explained above, Fuller's own admission that he pushed MH and her testimony that he pushed her to the ground and that she landed hard on her back, could lead a reasonable jury to believe that some level of assault short of strangulation did occur. In *Coryell*, the court concluded that, because the evidence in the record supported an inference that Coryell assaulted the victim, but did not strangle her, the instruction for fourth degree assault was warranted. *Id.* at 418-19. We should reach the same conclusion here.

Therefore, we hold that the trial court did not abuse its discretion in finding that the evidence submitted supported a reasonable inference that Fuller assaulted but did not strangle the victim, and thus, the fourth degree assault instruction was warranted.

## CONCLUSION

We affirm Fuller's conviction.

No. 57486-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Cruser, J.

Che, J.