# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59369-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JAMES R. REINHOLDT, | |
| Appellant. | |

CHE, J. — James Reinholdt appeals his conviction for first degree assault—domestic violence and while armed with a deadly weapon.

Reinholdt lived briefly with Robert Walters. One evening, Reinholdt struck Walters in the head with a machete. The State charged Reinholdt with assault.

At a pre-trial hearing, the trial court granted a continuance. Neither Reinholdt nor his counsel were present at the hearing; however, the written order included defense counsel's typewritten signature and the typewritten phrase, "discussed and agreed," above the defendant's signature line. Subsequently, Reinholdt filed multiple self-represented motions arguing that he had not consented to the continuance. Defense counsel moved twice to withdraw from representation. The court denied these motions.

At trial, Reinholdt testified that he swung the machete with the intent to scare Walters and get Walters to take Reinholdt seriously, but that he had not intended to strike Walters. While discussing jury instructions, the parties agreed the court should instruct the jury on both the

actual battery and the common law definitions of assault.[1] However, the common law definition was not included in the jury instructions. The jury convicted Reinholdt.

Reinholdt argues that (1) the trial court violated his rights to counsel and to be present at the hearing on the motion to continue, (2) he received ineffective assistance of counsel when defense counsel failed to ensure the trial court instructed the jury on the common law definition of assault, and (3) the trial court erred in imposing a five-year mandatory minimum sentence in reliance upon a fact not found by the jury. Additionally, Reinholdt raises claims in a statement of additional grounds (SAG).

We hold that (1) the trial court did not violate Reinholdt's rights to counsel and to be present, (2) Reinholdt did not receive ineffective assistance of counsel, and (3) the trial court erred when it imposed a five-year mandatory minimum sentence through a scrivener's error. Finally, we hold that Reinholdt's SAG claims fail.

Accordingly, we affirm Reinholdt's conviction but remand to correct the scrivener's error.

FACTS

I. BACKGROUND

In July 2023, Walters moved in with Reinholdt. About two weeks after moving in, Walters returned home late one night. Reinholdt answered the door, visibly upset.

---

[1] *See State v. Hahn*, 174 Wn.2d 126, 129, 271 P.3d 892 (2012) (defining the "actual battery" type of assault as "unlawfully touching another with criminal intent" and the "common law" type of assault as "placing another in apprehension of physical harm"). For clarity, we refer to the two separate definitions of assault as the "actual battery" definition and the "common law" definition, respectively.

Walters entered the apartment and sat on a chair while Reinholdt sat on a couch. A few minutes later, Reinholdt got up from the couch and crossed the room toward Walters. Reinholdt swung a machete at Walters twice, striking him once in the face.

Walters sustained a cut on his face that extended horizontally, from his nose to his earlobe, and required 140 stitches. It permanently severed nerves in his face, causing him to lose feeling and muscle control.

## II. PROCEDURAL BACKGROUND

A.    Pre-Trial Events

The State charged Reinholdt with assault in the second degree—domestic violence and while armed with a deadly weapon. The trial court appointed counsel for Reinholdt and set omnibus for August 23 and trial for October 2.

At the August omnibus hearing, the trial court continued the trial date to December 4.

> [THE STATE]:   Your Honor, returning quickly to the matter that was agreed upon, that's—[defense counsel's name] is the defense attorney on that. He and I spoke—
> THE COURT:    Are we talking about State v. Reinholdt?
> [THE STATE]:   Yes.
> THE COURT:    Yes, okay.
> [THE STATE]:   He and I exchanged information yesterday, and he had got [Reinholdt] a plea offer that is pretty substantial. He wanted more time. This is the first request for a continuance. So I have no objection to continuing all the matters. I think he has written that he discussed this with his client and his client agrees.
> THE COURT:    He did.
> [THE STATE]:   Excellent.
> THE COURT:    Okay. And on that basis, I do find good cause for the continuance so that the parties can address the plea. And that is signed and submitted.
> (Proceedings concluded.)

Rep. of Proc. (RP) (Aug. 23, 2023) at 15-16. There is no indication that Reinholdt or his counsel were present for the entry of the continuance order.[2]

In its written continuance order, the trial court indicated that it continued the trial based upon "written agreement of the parties pursuant to CrR 3.3(f)(1) as indicated by signatures below." Clerk's Papers (CP) at 180. The court reset trial for December 4.

The prosecutor assigned to Reinholdt's case signed the order continuing trial. Above the signature line for "Attorney for Defendant," there appears, defense counsel's typewritten name and bar number. CP at 180. Beneath the attorney signature lines is a typed statement, reading, in pertinent part, "My attorney has advised me that I have a right to go to trial within 60 days of my arraignment if I am in custody. . . . By signing this document, I acknowledge and waive the right to have a trial within those timelines." CP at 180. Above the signature line for "Defendant," appears the typewritten phrase, "discussed and agreed." CP at 180.

Following the continuance order, Reinholdt filed at least five self-represented motions, all of which claimed that his speedy trial rights had been violated because he had neither consented to nor been made aware of the waiver of his speedy trial right. He claimed that he was not aware of the waiver until after his original trial date of October 2 had passed.

At a hearing on October 12, the trial court stated, "It appears that discovery is not complete, pending state lab reports and defense witness interviews." RP (Oct. 12, 2023) at 17.

---

[2] The parties stipulate on appeal that at the beginning of the trial court's August 23 calendar, a prosecutor and another defense attorney from the office of public defense appeared. The parties further stipulate that approximately 41 minutes later, the trial court stated "it looks like we have an agreement on State v. Reinholdt? Is that correct? . . . We have someone coming to the booth now, so . . . . Well, I've just lost the jail booth." Rep. of Proc. (RP) (Aug. 23, 2023) at 2 (Parties' Stipulation Regarding the App. Rec.).

Reinholdt's counsel responded he was exploring an alibi defense that required him to find witnesses, the state lab reports were still pending, and the December trial date may proceed depending on whether the outstanding issues resolved.

On November 9, Reinholdt's counsel filed his first motion to withdraw as counsel. He cited the August 23 continuance order as the origin of the issues between Reinholdt and himself. He acknowledged that Reinholdt "has lost his faith in defense counsel's ability to safeguard his Constitutional rights and penal interests," and stated, "Defense counsel cannot render effective assistance of counsel under the Sixth Amendment when his client does not trust counsel's legal advice." CP at 190. He confirmed that on the August 23 continuance order, "[t]he signature line for defense counsel indicates approval by use of [counsel's] typewritten name." CP at 190.

On November 16, the trial court heard defense counsel's motion to withdraw. The trial court informed Reinholdt that his counsel's withdrawal would automatically restart the time for trial period and require continuance of trial. After consulting with defense counsel, Reinholdt no longer supported his counsel's motion to withdraw. Defense counsel withdrew his motion. Several days later, Reinholdt rejected the State's plea offer, and the State amended the charge against Reinholdt to one count of assault in the first degree—domestic violence and while armed with a deadly weapon.

On November 30, Reinholdt's counsel requested an RCW 10.77 competency evaluation of Reinholdt. Counsel alleged that while he had been discussing the case with Reinholdt, "Reinholdt accused counsel of conspiring with the assigned prosecutor to deceive him during the course of plea negotiations with the intention of depriving him of his constitutional rights." CP at 201. Counsel further stated, "Reinholdt's delusional belief that counsel is supplying him

with false information and working against him to deny him his constitutional rights renders Mr. Reinholdt unable to make rational fact-based decisions." CP at 201. At a hearing on the request, counsel told the trial court that Reinholdt did not believe what counsel was telling him, and that this had made "it impossible for [counsel] to actually represent [Reinholdt] fairly in trial." RP (Nov. 30, 2023) at 38. Reinholdt informed the court he distrusted his counsel because "prior to the whole waiver of my speedy trial rights, I did not sign a document stating that I agreed to the waiver." RP (Nov. 30, 2023) at 45. The trial court denied the request for a competency evaluation.[3]

B.      Trial Testimony

At trial, the witnesses testified consistently with the facts above.

When Walters arrived home on the night of the incident, Reinholdt was angry. According to Walters, Reinholdt was angry because Walters' return home had caused him to "die" in a video game he had been playing. 2 RP (Dec. 6, 2023) at 327. Reinholdt appeared to grow angrier and was talking to himself when they sat down. Walters "wasn't paying much mind because [he had] seen [Reinholdt] upset before." 2 RP (Dec. 6, 2023) at 329. After several minutes, Reinholdt raised the machete over his head and, while yelling, ran toward Walters. Walters explained that Reinholdt usually kept the machete near the couch, and that it was "[l]ike a best friend" to him. 2 RP (Dec. 6, 2023) at 330. When asked whether he had any reaction when Reinholdt jumped up with the machete and came toward him, Walters replied, "[n]o, not

---

[3] The trial court also declined to address Reinholdt's self-represented motions claiming speedy trial violation.

really. I've seen it before. . . . He—he frequently got himself worked up and he goes and hit the—hit the wall with his machete or chair or something." 2 RP (Dec. 6, 2023) at 331.

The first machete swing missed Walters. After Reinholdt swung the machete for the first time, Walters turned his face away from Reinholdt, toward some of his belongings on the floor. Walters felt a "thud on the left side of [his] face." 2 RP (Dec. 6, 2023) at 368. He touched his face and saw blood run down his arm to his elbow.

According to Reinholdt, he was angry because Walters was not contributing money toward rent, Walters had not provided Reinholdt with any methamphetamine in lieu of rent, and Reinholdt had just found out that Walters used fentanyl, which was a "deal-breaker" for him. 2 RP (Dec. 6, 2023) at 389. Reinholdt had planned to "kick [Walters] out" of the home. 2 RP (Dec. 6, 2023) at 387. Reinholdt testified that they had a conversation about Walters' failure to contribute to rent. Thereafter Reinholdt "did pick up the machete and [] did attempt to hit [Walters] the first time." 2 RP (Dec. 6, 2023) at 389.

Reinholdt testified "I was pissed at being used, and I had to make a point." 2 RP (Dec. 6, 2023) at 394. He used the machete because he wanted Walters to know "[t]hat [he] was serious" about their living arrangement. 2 RP (Dec. 6, 2023) at 395. Reinholdt also claimed that before he swung the machete toward Walters, he used it to "cut the cushions on the couch out of anger." 2 RP (Dec. 6, 2023) at 396. He claimed that when he walked toward Walters with the machete, it was "[t]o get the point across that I'm not to be used. If he would have still paid me, I would have let him still stay [in the apartment]." 2 RP (Dec.6, 2023) at 398-99.

Reinholdt recalled when the second swing hit Walters: "I was like holy son of a—what did I just do? Didn't know what to do. I was, like, panicked." 2 RP (Dec. 6, 2023) at 402.

"I didn't mean to hit him the second time." RP (Dec. 6) at 394. He explained that part of the reason he swung the machete a second time was because he had been on drugs. Further describing why he swung the second time, Reinholdt stated it was

> [b]ecause [Walters] didn't seem like he was, like, phased by [the first swing]. Like, he thought I was just bullshitting—I mean, excuse my language. He didn't take me serious. And the second [swing] was too close. I have one eye. I have a depth perception problem. It—I did not intend to hurt him.

RP (Dec. 6) at 399. Walters' lack of reaction to the first swing angered Reinholdt because he wanted Walters to take him seriously. Multiple times, Reinholdt affirmed that he intended to scare Walters when he swung the machete at him.

Reinholdt testified that the first swing had been about one foot away from Walters, and that on the second swing, he attempted to get slightly closer before pulling away. He explained that he did not "step into" the second swing because he did not intend to make contact. 2 RP (Dec. 6, 2023) at 400. And when Walters moved toward his belongings on the floor, Reinholdt misjudged where he was in relation to the swing because of his poor depth perception and the fact that he was under the influence of methamphetamine. However, he also testified that if he had missed Walters as planned, and Walters had still shown no reaction, he "[p]robably" would have continued to show Walters he was serious until he elicited a reaction from Walters. 2 RP (Dec. 6, 2023) at 419.

Both parties agreed that after Reinholdt hit Walters, Reinholdt dropped the machete and backed away. Reinholdt testified that he offered to take Walters to the hospital, but that Walters declined.

C.      Jury Instructions

As the trial court discussed proposed instructions with the parties, the State suggested amending its proposed jury instruction defining assault. In its proposed jury instructions, the State had only included the actual battery definition of assault. It stated:

> An assault is an intentional touching or striking or cutting of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or cutting is offensive if the touching or striking or cutting would offend an ordinary person who is not unduly sensitive.

CP at 272; WASHINGTON PATTERN JURY INSTRUCTION (WPIC) 35.50.

However, at the hearing, the State proposed adding the common law definition of assault also defined in WPIC 35.50:

> [a]n assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

WPIC 35.50. The State suggested this change because "given some of the testimony about Mr. Reinholdt's intent to scare Mr. Walters and talking about how he didn't actually intend to make physical contact, it's appropriate to offer the jury the wider definition of assault." 3 RP (Dec. 7, 2023) at 474.

Defense counsel responded, "I reviewed it. I think it is appropriate." 3 RP (Dec. 7, 2023) at 474-75. The State concluded, "I will ask my staff to file that as a supplemental and get a . . . copy to Your Honor." 3 RP (Dec. 7, 2023) at 475. The State confirmed its intent to include the common law definition of assault later: "we're using the full definition of assault from [WPIC] 35.50." 3 RP (Dec. 7, 2023) at 483.

The trial court provided the parties with a set of draft instructions to review, which included the lesser degree offenses of second and third degree assault, but did not include the common law definition of assault. Thrice, the trial court asked defense counsel whether he had any issues with the instructions, and thrice, defense counsel did not raise any issue with the instruction defining assault.

Instruction No. 16, defining assault, read,

> [a]n assault is an intentional touching or striking or cutting of another person with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person.
> A touching or striking or cutting is offensive if the touching or striking or cutting would offend an ordinary person who is not unduly sensitive.

RP (Dec. 7) at 543-44.

D.      Closing Arguments

In closing argument, the State clarified that the second swing constituted the crime charged and the first swing showed Reinholdt's intent was building up for the second swing.

Defense counsel argued that Reinholdt did not have the intention to inflict great bodily harm because he never intended to strike Walters.[4] Defense counsel contended that Reinholdt was under the influence of methamphetamine at the time of the attack, and that based on Reinholdt's choice to swing the machete near Walters' face, the amount of force behind the swing, and Reinholdt's immediate reaction following hitting Walters, Reinholdt had not intended

---

[4] Instruction No. 6 stated: "A person commits the crime of Assault in the First Degree when, with intent to inflict great bodily harm, he or she assaults another and inflicts great bodily harm or assaults another with a deadly weapon, or by any force or means likely to produce great bodily harm or death." CP at 90.

to inflict great bodily harm upon Walters.  Defense counsel suggested that second or third degree assault were more fitting to the facts of the case.[5]

Defense counsel suggested, at least twice, that Reinholdt acted recklessly by swinging the machete at Walters. First,

> What he did was reckless.  A person under the influence and in an altered emotional state who has, quite obviously, a lack of depth perception because he only has one eye . . . should not be wielding a machete anywhere near in close space with other people.  That is reckless.  That was a reckless act to be doing that.  And then, of course, caused this tragic incident to happen.

3 RP (Dec. 7, 2023) at 589.  Second, "[y]ou could easily decide recklessly is the right definition" for a conviction.  3 RP (Dec. 7, 2023) at 594.  Counsel also suggested several times that Reinholdt acted with criminal negligence.  Finally, defense counsel seems to have suggested that a finding of not guilty was unlikely: "[Third degree assault is] the lowest crime here besides finding [Reinholdt] not guilty, which you're welcome to do.  But given the circumstances." 3 RP (Dec. 7, 2023) at 593.

The jury found Reinholdt guilty of first degree assault and returned special verdict forms finding that Reinholdt committed the act while armed with a deadly weapon and against a member of the same household.

---

[5] Instruction No. 9 stated: "A person commits the crime of Assault in the Second Degree when he or she intentionally assaults another and thereby recklessly inflicts substantial bodily harm or assaults another with a deadly weapon."  CP at 93.  Instruction No. 11 stated: "A person commits the crime of Assault in the Third Degree when he or she with criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm."  CP at 95.

E.      Post-Trial

Prior to sentencing, Reinholdt filed a sixth self-represented motion claiming that his speedy trial right had been violated and that he "did not consent" to the August waiver.  CP at 117.

Defense counsel also filed a second motion to withdraw as counsel.  Counsel again stated that the August 23 continuance order was the origin of the conflict between Reinholdt and himself.  He further stated, "[c]ounsel and Mr. Reinholdt have lost the ability to effectively communicate to present a coherent sentencing case."  CP at 234.  Again, he stated that on the August 23 continuance order, "[t]he signature line for defense counsel indicates approval by use of his typewritten name."  CP at 234.  The trial court denied the motion.

The trial court sentenced Reinholdt to 226 months confinement, among other conditions. In its judgment and sentence, the trial court checked a box finding that Reinholdt had "used force or means likely to result in death or intended to kill the victim," and imposed a mandatory minimum term of confinement of five years under RCW 9.94A.540.  CP at 145, 166.[6]  No explanation was given for this finding in the judgment and sentence nor during sentencing.  *See* RP (Feb. 01, 2024).

Reinholdt appeals.

ANALYSIS

Reinholdt argues that the trial court violated his rights to counsel and to be present at the August 23 hearing on the motion to continue, that he received ineffective assistance of counsel

---

[6] Reinholdt's judgment and sentence was amended on February 1, 2024.  The amendments pertained solely to the identification of the charges against Reinholdt.  *See* CP at 164.

when defense counsel failed to ensure the trial court instructed the jury on the common law definition of assault, and that the trial court erred in imposing a five-year mandatory minimum sentence in reliance upon a fact not found by the jury. Additionally, Reinholdt raises two claims in a SAG.

## I. RIGHT TO BE PRESENT AND RIGHT TO COUNSEL

Reinholdt argues that his right to be present and his right to counsel were violated when the trial court ordered a continuance at the August hearing where neither Reinholdt nor his assigned counsel appeared. We disagree.

### A. Right to be Present

We review a claimed violation of a defendant's right to be present de novo. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). Defendants have the right to be present at all critical stages of the proceedings against them. *Id*. More specifically, defendants have the right to presence at any proceeding when their presence has a reasonably substantial relationship to their opportunity to defend themselves against the charges. *Id.* at 881. However, a defendant does not have a right to be present at a hearing considering a motion for continuance. *Id.* at 882 (citing *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 920, 952 P.2d 116 (1998)).

CrR 3.3 governs procedures related to a defendant's right to speedy trial, including continuances. Pursuant to CrR 3.3(f), a trial court may grant a continuance or delay based upon either written agreement of the parties or a motion by the trial court or a party. The rule allowing a trial court to grant a continuance based upon written agreement of the parties reads, in pertinent part,

> Upon written agreement of the parties, which must be signed by defense counsel or the defendant . . . the court may continue the trial date to a specified date. In the absence of the defendant's signature or presence at the hearing, defense counsel's signature constitutes a representation that the defendant has been consulted and agrees to the continuance.

CrR 3.3(f)(1).

CrR 3.4(b) states when a defendant must be present during criminal proceedings. In relevant part,

> The defendant shall be present physically or remotely . . . at the arraignment . . ., at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules, or as excused or excluded by the court for good cause shown.

CrR 3.4(b).[7]

Reinholdt argues that a hearing to waive a defendant's speedy trial right is a critical stage of the proceedings, and therefore, Reinholdt had a constitutional right to be present at the hearing on August 23. But we disagree because our court rules and case law instruct otherwise.

CrR 3.3(f)(1) explains that a defendant's presence is not required at a hearing on a motion to continue. The rule instructs that when a defendant is not present at a hearing on a motion to continue, defense counsel's signature ensures to the court that the defendant has agreed to the continuance. Further, CrR 3.4(b) indicates times when a defendant must be present unless excluded or excused for good cause. Notably absent from the list is a motion for continuance.

Here, the circumstances show that defense counsel sought the motion to continue so that he could discuss the plea offer with Reinholdt and that defense counsel signed it. Counsel's full

---

[7] The current version of CrR 3.4 became effective after Reinholdt's trial proceedings; however, we cite to it as the relevant portion, CrR 3.4(b), remained unchanged. *See* Former CrR 3.4 (2021) (rescinded 2024).

14

name and bar number were written on the signature line, and counsel even noted above the line for Reinholdt's signature that he had discussed the implications of a continuance with Reinholdt, and that Reinholdt had agreed. Further, counsel twice confirmed that his typewritten signed name on the motion indicated his adoption and approval. Thus, pursuant to CrR 3.3(f)(1), Reinholdt had no right to be present at the hearing.

Reinholdt counters that this court's opinion in *State v. Lackey*, 153 Wn. App. 791, 223 P.3d 1215 (2009) (published in part), supports his claim because "a hearing to waive speedy trial is a critical stage of the proceedings." Br. of Appellant at 30. However, *Lackey* is inapposite. In *Lackey*, the relevant hearing did not involve a motion to continue, but instead, involved a trial court pressuring an unrepresented Lackey to sign a speedy trial waiver, without allowing him, upon request, to consult with an attorney. 153 Wn. App. at 794. Further, in that case, Lackey's previous attorney had recently withdrawn from representation, restarting Lackey's speedy trial time. *Id*. While the court in *Lackey* held that waiver of speedy trial was a critical stage, the circumstances here are distinguishable.

Turning to case law, generally, defendants do not have a right to be present at hearings considering continuance motions. *Irby*, 10 Wn.2d at 882. In *Benn*, our supreme court held that criminal defendants do not have the right to be present at hearings considering continuance motions. 134 Wn.2d at 920. In *Benn*, the petitioner argued that the trial court violated his right to be present when it granted a continuance in his absence. *Id*. But our supreme court held that the petitioner's absence at that hearing did not impact his opportunity to defend the charges against him. *Id*. Further, the court held that the motion did not involve the presentation of

evidence and did not have the purpose of determining the admissibility of any evidence or the availability of any defense theory. *Id.*

In *Benn*, much like Reinholdt's case, the trial court granted the continuance upon defense counsel's request. *Id.* Thus, Reinholdt, like the petitioner in *Benn*, did not have a constitutional right to be present at the August 23 hearing. Because Reinholdt had no right to be present at the continuance hearing, no violation of his right to be present occurred. Reinholdt's claim that the trial court violated his right to be present fails.

B.      Right to Counsel

Criminal defendants are guaranteed the right to counsel under both our federal and state constitutions. *State v. Heng*, 2 Wn.3d 384, 388, 539 P.3d 13 (2023); U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22. "The right to counsel requires defendants to have the ability to confer meaningfully and privately with their attorneys at all critical stages of the proceedings." *State v. Brashear*, 32 Wn. App. 2d 934, 939, 559 P.3d 121 (2024) (published in part), *review denied*, 4 Wn.3d 1018, *cert. denied*, 146 S. Ct. 233 (2025). An event is a critical stage if "'a defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is otherwise substantially affected.'" *Heng*, 2 Wn.3d at 392 (quoting *State v. Heddrick*, 166 Wn.2d 898, 910, 215 P.3d 201 (2009)).

"Counsel should always be present at all preliminary hearings because that is what the federal and state constitutions and our rules require." *Id.* at 394. However, in determining whether to apply automatic reversal (structural error) to the deprivation of counsel, we must "consider if rights were lost in a way that demonstrably affected the outcome of the case." *Id.* at 394-95. In other words, we must "examine the effect of the error on the defendant's case." *Id.* at

393.  But even if the deprivation of counsel occurred during a critical stage, if it was not a complete deprivation, then structural error does not apply, and instead, we apply a constitutional harmless error analysis.  *See State v. Dimas*, 30 Wn. App. 2d 213, 219-20, 544 P.3d 597 (2024) (published in part) (stating that only complete denials of counsel at a critical stage of the proceedings call for automatic reversal).  Under a constitutional harmless error analysis, we reverse unless the State meets its burden of showing beyond a reasonable doubt that the violation of the right did not contribute to the verdict.  *Heng*, 2 Wn.3d at 395.

Reinholdt argues that because the August 23 hearing was a critical stage in the proceedings against him, the violation of his right to counsel constituted structural error, requiring automatic reversal.  However, we disagree because the continuance hearing was neither a critical stage nor a complete deprivation of counsel.

As discussed above, continuance hearings generally are not critical stages and Reinholdt does not show his was a critical stage.  Next, defense counsel's compliance with the requirements of CrR 3.3(f)(1) shows no complete deprivation of counsel occurred.  Pursuant to CrR 3.3(f)(1), defense counsel signed the motion to continue, indicating both that he agreed with the motion and that Reinholdt had been consulted.  *See* CrR 3.3(f)(1) ("defense counsel's signature constitutes a representation that the defendant has been consulted and agrees to the continuance").  Defense counsel explicitly wrote that he had "discussed and agreed" upon the motion with Reinholdt.  Counsel's signature ensured that he and Reinholdt had meaningfully conferred about the motion.  Thus, Reinholdt was not completely deprived of counsel, and any alleged error does not require automatic reversal.

Turning to the constitutional harmless error analysis, Reinholdt argues that any error which may have occurred was not harmless because the August 23 hearing was a "breaking point in Reinholdt's relationship with his attorney." Br. of Appellant at 36. In support of this argument, Reinholdt notes the numerous motions he filed stating that he had not consented to the continuance. He also points to defense counsel's motions to withdraw and defense counsel's request for an evaluation of Reinholdt's competency. He argues that his "distrust of his attorney prevented him from rationally evaluating the plea offer" initially proposed by the State. Br. of Appellant at 37. Reinholdt appears to contend that had his relationship with counsel not broken down, he would have pleaded guilty to the State's offer. We disagree because even assuming, without deciding, that there was a partial deprivation of counsel, the State demonstrates harmlessness beyond a reasonable doubt.

While Reinholdt may have distrusted defense counsel at times, at the October 12 hearing, there was good cause found for the August continuance. Reinholdt's counsel explained that discovery was incomplete and he was exploring an alibi defense, which required him to find witnesses, presumably provided by Reinholdt. Additionally, at the November 16 hearing, Reinholdt no longer agreed with his counsel's motion to withdraw. Reinholdt affirmatively decided to continue working with his counsel. These instances signaled that, at times, Reinholdt and his counsel were working together.

Reinholdt rejected the State's offer several days after the November 16 hearing, when Reinholdt and his counsel were cooperating with each other. Thus, Reinholdt's argument that his relationship with defense counsel caused him to inadequately consider the State's plea deal is tenuous and fails. The question on review is whether the State can show beyond a reasonable

18

doubt that the alleged deprivation of counsel did not contribute to Reinholdt's conviction for first degree assault. The State has met this burden.

We conclude that Reinholdt had no right to be present at the August 23 hearing. Further, any deprivation of counsel he may have experienced was not a complete deprivation, and any resulting error was harmless. For these reasons, we conclude that Reinholdt's arguments that he was deprived of both his right to counsel and his right to be present at the August 23 hearing on the motion to continue are unavailing.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Reinholdt argues that he was denied effective assistance of counsel because defense counsel failed to ensure that the jury was instructed on the common law definition of assault, "effectively negat[ing] Reinholdt's defense" theory. Br. of Appellant at 9. Reinholdt argues that his counsel's representation fell below an objective standard of reasonableness because there was no legitimate or strategic reason for counsel's failure to ensure that the trial court provided the jury with the common law definition of assault. The State appears to agree that defense counsel's representation was deficient. Even if we assume, without deciding, that defense counsel's representation was deficient, Reinholdt's claim still fails because he was not prejudiced by his counsel's representation.

A.      Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee criminal defendants the right to effective counsel. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. For claims of ineffective assistance of

counsel, Washington state has adopted *Strickland*'s[8] two-pronged test, which requires that

defendants show "(1) 'counsel's representation fell below an objective standard of

reasonableness' and (2) 'the deficient performance prejudiced the defense.'" *State v. Bertrand*,

3 Wn.3d 116, 128, 546 P.3d 1020 (2024) (quoting *Strickland*, 466 U.S. at 687-88).  If a

defendant fails to establish either prong, their claim is defeated.  *Id*.

"Effective assistance includes many things.  'It is thus impossible to exhaustively define

the obligations of counsel or form a checklist for judicial evaluation of attorney performance.'"

*State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018) (internal quotation marks and

alterations omitted) (quoting *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 99-100,

351 P.3d 138 (2015)).  We "must engage in a fact-specific inquiry into the reasonableness of an

attorney's actions, measured against the applicable prevailing professional norms in place at the

time." *Yung-Cheung Tsai*, 183 Wn.2d at 99.

As long as counsel's actions constitute legitimate trial strategies or tactics, counsel's

performance is not deficient.  *Bertrand*, 3 Wn.3d at 128.  We strongly presume that the

performance of defense counsel is reasonable.  *Id*.  Further, we must "make 'every effort . . . to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.* at

130 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

To establish that defense counsel's performance was prejudicial, the defendant must

show that "counsel's error [was] 'sufficient to undermine confidence in the outcome' of the

trial." *Id.* at 133 (quoting *Strickland*, 466 U.S. at 694).  In other words, the defendant must show

---

[8] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

"'a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.'" *Bertrand*, 3 Wn.3d at 133 (quoting *Strickland*, 466 U.S. at 694) (internal brackets omitted). "The 'reasonable probability' standard is 'lower than a preponderance standard,' but it requires the defendant to 'affirmatively prove prejudice' by showing more than a 'conceivable effect on the outcome.'" *Id.* (internal quotation marks omitted) (quoting *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017)).

Ultimately, we must consider whether it is reasonably probable that "'the factfinder would have had a reasonable doubt respecting guilt,'" absent counsel's deficient representation. *Id.* at 129 (quoting *Strickland*, 466 U.S. at 695). "[A] court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to the law . . . [and] must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification' and the like." *Strickland*, 466 U.S. at 694-95.

A person commits first degree assault if, "with intent to inflict great bodily harm[, they] [a]ssault[] another with . . . any deadly weapon . . . or [a]ssault[] another and inflict[] great bodily harm." RCW 9A.36.011(1)(a), (d). A person commits second degree assault if, "under circumstances not amounting to assault in the first degree[, they] [i]ntentionally assault[] another and thereby recklessly inflict[] substantial bodily harm[] or . . . [a]ssault[] another with a deadly weapon." RCW 9A.36.021(1)(a), (c). Finally, a person commits third degree assault if, "under circumstances not amounting to assault in the first or second degree[, they,] [w]ith criminal negligence, cause[] bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." RCW 9A.36.031(1)(d).

Because Washington's criminal statutes do not define "assault," it has instead been defined by our courts. *State v. Byrd*, 125 Wn.2d 707, 712, 887 P.2d 396 (1995); *See* RCW 9A.04.060 (criminal statues are supplemented by consistent common law). "Under the common law, a person assaults another by attempting to inflict bodily harm on another (attempted common law battery), by unlawfully touching another with criminal intent (actual battery), or by placing another in apprehension of physical harm (common law assault)." *State v. Hahn*, 174 Wn.2d 126, 129, 271 P.3d 892 (2012).

Regarding challenges to jury instructions, our courts have held that proper instructions allow the parties to argue their case theories, do not mislead the jury, and, when read as a whole, inform the jury of the applicable law. *State v. Bogdanov*, 27 Wn. App. 2d 603, 617, 532 P.3d 1035 (2023). Additionally, we presume jurors follow the court's instructions. *State v. Weaver*, 198 Wn.2d 459, 467, 496 P.3d 1183 (2021).

B.      Reinholdt Fails to Show Prejudice

Reinholdt does not argue that absent his counsel's deficient representation, he would have been acquitted at trial. Instead, he argues that absent his counsel's deficient representation, there was a reasonable probability that the jury would have convicted him of second degree assault. He specifically contends that the absence of the common law assault definition foreclosed the jury's consideration of second degree assault. We disagree.

Reinholdt contends that if the trial court had included an additional instruction defining assault "as an act . . . done with intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict body injury," then the jury would

22

have convicted him of second degree assault. WPIC 35.50. But even if the trial court had provided this instruction to the jury, there is no reasonable probability that the jury would have returned a different verdict. *Bertrand*, 3 Wn.3d at 133.

The jury did not agree with Reinholdt's defense theory—that although he swung the machete intentionally, he struck Walters accidentally—because if it had, it would have convicted Reinholdt of third degree assault or acquitted him altogether. The jury instruction for third degree assault, required only that the defendant "with criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." CP at 95. And yet, the jury convicted Reinholdt of first—not third—degree assault.

Additionally, there is no reasonable probability that, had the jury been provided the common law instruction, it would have convicted Reinholdt of second degree assault because his own testimony ran counter to that outcome. Despite Reinholdt testifying that the machete strike was accidental, he also testified that after the second swing he would have continued to show Walters that he was serious until he got the reaction he was seeking. Further, Reinholdt and Walters both testified that Reinholdt was visibly angry leading up to the attack, and according to Walters, Reinholdt grew progressively angrier. Finally, Reinholdt testified that he meant to hit Walters the first time he swung the machete. Thus, even though Reinholdt's defense theory was that the strike was accidental, the testimony at trial suggested otherwise, and as a result, the jury did not adopt Reinholdt's defense theory.

Based on testimony presented at trial, coupled with the jury's decision to convict Reinholdt of first degree assault and not third degree assault, we conclude that there is no reasonable probability that the jury would have returned a different verdict had the trial court

23

provided it with the common law definition of assault. As a result, defense counsel's alleged failure to ensure completeness of the jury instructions does not undermine our confidence in the outcome of the trial. *Bertrand*, 3 Wn.3d at 133. We conclude that Reinholdt did not receive ineffective assistance of counsel.

### III. MANDATORY MINIMUM SENTENCE

Reinholdt argues that the trial court erred by imposing a five-year mandatory minimum period of confinement as a result of its finding that Reinholdt used force or means likely to result in death or intended to kill the victim when no such finding was made by the jury. The State agrees that this was error. We agree as well.

We review whether a sentence is legally erroneous de novo. *State v. Dyson*, 189 Wn. App. 215, 224, 360 P.3d 25 (2015) (published in part). The due process clause of the Fourteenth Amendment, coupled with the Sixth Amendment, requires that all elements of the charged offense be found beyond a reasonable doubt by an impartial jury. *Id*. "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 225 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). Thus, any fact necessary to impose a mandatory minimum sentence is an element that must be submitted to the jury. *Id.* at 225-26.

RCW 9.94A.540(b) provides, "[a]n offender convicted of the crime of assault in the first degree . . . where the offender used force or means likely to result in death or intended to kill the victim shall be sentenced to a term of total confinement not less than five years." This mandatory minimum sentence is not automatically attached to a conviction for first degree assault, and thus, its imposition requires a separate factual finding by the jury. *Id.* at 227 (citing

24

*In re Pers. Restraint of Huy Khac Tran*, 154 Wn.2d 323, 329-30, 111 P.3d 1168 (2005) and *State v. McChristian*, 158 Wn. App. 392, 403, 241 P.3d 468 (2010)).

Scrivener's errors are clerical mistakes "that, when amended, would correctly convey the trial court's intention, as expressed in the record at trial." *State v. Houser*, 30 Wn. App. 2d 235, 278 n.15, 544 P.3d 564 (2024), *review denied*, 3 Wash.3d 1015 (2024).

In this case, the jury found Reinholdt guilty of assault in the first degree, and it made special verdict findings that Reinholdt was armed with a deadly weapon and that Reinholdt and Walters were members of the same household or family. To convict Reinholdt of first degree assault, the jury could have either found that the assault (1) "was committed with a deadly weapon or by a force or means likely to produce great bodily harm or death" or (2) "resulted in the infliction of great bodily harm." CP at 91. There is no way to know which alternative the jury used to convict Reinholdt. Despite that, the judgment and sentence reflected that Reinhold had "used force or means likely to result in death or intended to kill the victim," and imposed a mandatory minimum term of confinement of five years. CP at 145, 166. Because imposition of the five-year mandatory minimum requires that the jury make that particular finding, and because the jury made no such finding here, the mandatory minimum was erroneously included in the judgment and sentence.

We agree with Reinholdt and the State that the trial court erred by including the five-year mandatory minimum pursuant to RCW 9.94A.540(b). Because the jury did not make the finding, and because the trial court did not address the issue during sentencing, the trial court clearly did not intend to check the box indicating that it had made the requisite finding for the five-year mandatory minimum. Therefore, the finding is a scrivener's error because amending

25

the judgment and sentence by striking the requisite finding would correctly convey the trial court's intention. As a result, we remand to the trial court to correct the error by striking the language indicating that Reinholdt used force or means likely to result in death or intended to kill the victim.[9] *See State v. Gwin*, 31 Wn. App. 2d 295, 310, 548 P.3d 970 (2024).

## IV. SAG

Reinholdt appears to raise two arguments in a SAG, both of which pertain to the August 23 hearing and subsequent order to continue trial.

First, Reinholdt appears to argue that the State engaged in arbitrary action or governmental misconduct at the hearing because it allegedly forged the defense signatures on the order to continue, or at the very least, was uncertain that Reinholdt had consented to the continuance before it was entered. Reinholdt argues that as a result, dismissal is warranted under CrR 8.3(b). We disagree.

Reinhold points to the State's comment at the hearing: "I think [defense counsel] has written [on the order] that he discussed this with his client and his client agrees." SAG at 1. Reinholdt appears to argue that this comment revealed a lack of certainty on behalf of the State, due to the use of the phrase, "I think." SAG at 1. But this argument fails because defense counsel clearly wrote on the order, "discussed and agreed," indicating that Reinholdt not only understood the nature of the motion, but also that he consented to it. CP at 180. Reinholdt does not point to any further evidence in the record supporting his claim that the State engaged in

---

[9] Based upon Reinholdt's offender score, the low end of his standard sentence range was well above 60 months. *See* CP at 167 (indicating the low end of Reinholdt's standard range, including enhancements, as being 226 months). Our holding in no way reduces the standard sentence range based upon Reinholdt's offender score.

arbitrary action or government misconduct by allegedly forging the signatures on the order. He also fails to accord his allegation with his own defense counsel's later declarations stating that defense counsel himself signed the order continuing trial. *See* CP at 190 ("The signature line for defense counsel indicates approval"). This argument fails.

Second, Reinholdt argues that the trial court violated CrR 3.3 by granting the order to continue, and that as a result, he is entitled to dismissal of the charges with prejudice. We disagree.

The trial court's written order was based upon CrR 3.3(f)(1), which requires written agreement of the parties, and Reinholdt argues that under CrR 3.3(f)(1), written agreement of the parties required his signature. But CrR 3.3(f)(1) does not require a defendant's signature. The current version of CrR 3.3 became effective January 1, 2023, and was amended specifically to allow continuances based upon written agreement of the parties to be granted with only defense counsel's signature. *See* Former CrR 3.3 (2003) (rescinded 2023). CrR 3.3(f)(1) reads, "[i]n the absence of the defendant's signature or presence at the hearing, defense counsel's signature constitutes a representation that the defendant has been consulted and agrees to the continuance." Thus, in this case, defense counsel's signature and indication that he had discussed and agreed the motion with Reinholdt, coupled with the prosecutor's signature, was sufficient to constitute written agreement between the parties under CrR 3.3(f)(1). Therefore, this argument fails.

CONCLUSION

We hold that the trial court did not violate Reinholdt's rights to counsel and to be present, Reinholdt did not receive ineffective assistance of counsel, and the trial court erred when it

imposed a five-year mandatory minimum sentence through a scrivener's error.  Finally, we hold that Reinholdt's SAG claims fail.

Accordingly, we affirm Reinholdt's conviction but remand to correct the scrivener's error.

A majority of the panel, having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

Cruser, J.